## S08A1500. PHILLIPS v. THE STATE.
### (675 SE2d 1)

BENHAM, Justice.

Appellant Renaldo Tramone Phillips was found guilty of the 2002 malice murder and armed robbery of Mamadou Bah and sentenced to life imprisonment on each count, to be served consecutively.[1] On appeal, he contends reversible legal error was committed during his trial and maintains he was not afforded effective assistance from defense counsel. After examining appellant's enumerated errors, we affirm the judgment of conviction.

1. The State presented evidence that Mamadou Bah suffered fatal gunshot wounds from a bullet that entered his left upper arm, went through his left lung and his heart, and lodged in his right lung. The forensic pathologist who performed an autopsy on the body of the victim testified the fatal shot was fired from a distance of 12-24 inches. The victim was found slumped over in the front seat of his vehicle which was parked near the mailboxes of the apartment

---

[1] The victim was killed on August 17, 2002. Appellant was arrested in 2006 and the DeKalb County grand jury returned a true bill of indictment during its March 2006 term charging appellant with malice murder, felony murder (armed robbery), felony murder (aggravated assault), armed robbery, aggravated assault, and possession of a firearm during the commission of a crime by a convicted felon. Appellant's trial took place January 8-11, 2007, during which the trial court directed a verdict of acquittal on the firearm possession charge. On January 11, the jury returned guilty verdicts on the remaining charges and the trial court imposed two consecutive sentences of life imprisonment for malice murder and armed robbery after determining that the two felony murder convictions were vacated by operation of law and the aggravated assault conviction merged into the malice murder conviction. Appellant timely filed a motion for new trial on February 9, 2007, and an amended motion on November 9. A hearing on the amended motion was held on November 15, 2007, and the motion was denied on January 9, 2008. Appellant's timely notice of appeal was filed February 7, 2008, and the appeal was docketed in this Court on May 16, 2008. Oral argument was heard on September 22, 2008.

complex in which he resided. He was wearing a shirt, underwear, and socks, and his shoes were found on the parking surface outside his vehicle, at the driver's door. Appellant's fingerprints were found on the back door on the driver's side of the victim's vehicle. There was evidence that a bullet had been fired through the window of the back door on the driver's side into the vehicle.

Appellant's co-indictee, who had pled guilty to robbing the victim, testified that appellant drove to the co-indictee's house on the day the victim was killed and asked the co-indictee to drive appellant in appellant's vehicle to an apartment complex. When they arrived, the co-indictee parked at the complex's mailboxes and appellant walked over to the victim's vehicle as the victim was entering it and ordered the victim to "give it up." Appellant hit the victim in the head with a gun and had the victim remove his shoes and pants. According to the co-indictee, as appellant and the co-indictee walked away from the victim, appellant turned back and fired several shots at the victim's vehicle. The victim's wallet was found a month later on school property located between the site of the murder and appellant's home.

Also admitted into evidence were letters received by the co-indictee while he was in jail after having been arrested in connection with the murder of Mr. Bah. The co-indictee identified the letters as having been written by appellant while he was in jail awaiting trial on these charges. The writer of the letters repeatedly addressed the co-indictee with a racial epithet ("my n——"), expressed regret for what he had done, revealed that he dreamt "about him killing me instead . . . [,]" and discussed the weakness of the State's case against the two of them.

The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of malice murder and armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it did not suppress a statement appellant made to the lead investigating detective after appellant was arrested and before he was informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

The detective began the post-arrest interview by informing appellant of the charges against him and that appellant's friend (and, ultimately, his co-indictee) had implicated appellant in the murder and identified him as the triggerman. Using a racial epithet, appellant responded, "my n—— wouldn't do anything like that to me, I don't believe you." The detective then administered the *Miranda* warnings and appellant invoked his right to remain silent. After conducting a hearing, the trial court ruled that appellant's

statement was admissible because it was a spontaneous utterance and was not an incriminating statement. During the State's case-in-chief, the detective testified to appellant's remark and the State introduced into evidence incriminating letters purportedly written by appellant to his co-indictee while both were incarcerated and awaiting trial, in which letters the writer used the same racial epithet to refer to the co-indictee, the recipient of the letters.

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, supra, 384 U. S. at 444. A statement obtained in violation of *Miranda* is inadmissible in the State's case-in-chief, regardless of whether said statement is incriminating, because *Miranda* covers "any response — whether inculpatory or exculpatory — that the prosecution may seek to introduce at trial." *Rhode Island v. Innis*, 446 U. S. 291, 302, n. 5 (100 SC 1682, 64 LE2d 297) (1980). See *Davis v. State*, 698 S2d 1182, 1188 (Fla. 1997) (*Miranda* is not limited to the use of incriminating statements made by an accused during custodial interrogation, but applies to the use of *all* statements made by an accused during custodial interrogation); *State v. Primus*, 312 S.C. 256, 258 (440 SE2d 128) (SC 1994) (*Miranda* covers defendant's statements whether exculpatory or inculpatory). See also 2 LaFave et al., Criminal Procedure, Sec. 6.5 (b), p. 705 (3d ed. 2007).

*Miranda* warnings must be administered to an accused when the accused is in custody and subjected to interrogation or its functional equivalent, i.e., "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, supra, 446 U. S. at 301; *Walton v. State*, 267 Ga. 713 (4) (482 SE2d 330) (1997). "Voluntary statements made by unwarned suspects in custodial interrogation are presumed to be compulsory and are inadmissible at trial." *Waters v. State*, 281 Ga. 119, 121 (4) (636 SE2d 538) (2006). On the other hand, a spontaneous and unsolicited statement not made in response to any form of custodial interrogation is not subject to the strictures of *Miranda* and is admissible without the warnings having been given. *Smith v. State*, 264 Ga. 857 (3) (452 SE2d 494) (1995).

Appellant's statement was in response to the detective's summary of incriminating evidence against appellant. Because it is undisputed that appellant was under arrest at the time he uttered the statement at issue and appellant's statement was not in response to an express question posed to him, the issue is whether appellant was subjected to the functional equivalent of interrogation when he made the statement. More specifically, focusing "primarily upon the

perceptions of the suspect, rather than the intent of the police" (*Rhode Island v. Innis*, supra, 446 U. S. at 301), were the detective's words and action of informing appellant that his friend had implicated appellant as the triggerman in a murder something the detective should have known were reasonably likely to elicit a response from appellant that could be used by the prosecution in its case-in-chief? In *Gardner v. State*, 261 Ga. App. 10, 11 (582 SE2d 7) (2003), our Court of Appeals ruled that a trial court erred when it did not suppress a defendant's un-*Mirandized* statements made in response to a detective's summary of evidence against him because the detective "should have known that if he advised [the defendant] of the incriminating evidence against him, it was reasonably likely that [the defendant's] response would prove incriminating to some degree." *Gardner* is in keeping with appellate decisions holding that the disclosure of incriminating evidence to a suspect constitutes interrogation within the meaning of *Rhode Island v. Innis*. See *State v. Sawyer*, 156 SW3d 531 (Tenn. 2005) (placing defendant in an environment where defendant could reasonably believe he was to be interrogated and informing him of charge and that accomplice had given a statement was the functional equivalent of interrogation); *Hill v. United States*, 858 A2d 435 (D.C. App. 2004) (detective telling defendant that defendant's friend told police what had happened was the functional equivalent of interrogation); *Commonwealth v. DeJesus*, 567 Pa. 415 (787 A2d 394) (2001) (officer engaged in the functional equivalent of interrogation when officer told defendant he had been implicated in shootings and told him the contents of witness statements concerning his involvement). But see *State v. Grant*, 286 Conn. 499 (944 A2d 947) (2008) (officer's comment to defendant that his blood was found at scene was a response to the defendant's implicit question regarding the basis for his arrest); *People v. Haley*, 34 Cal. 4th 283 (96 P3d 170) (2004) (detective's statement informing defendant of the evidence against him was not the functional equivalent of interrogation); *State v. Maraschiello*, 88 SW3d 586, 603 (Tenn. Crim. App. 2000) (disclosure of incriminating evidence to a suspect does not necessarily constitute the functional equivalent of interrogation. See also 2 LaFave et al., Criminal Procedure, Sec. 6.7 (c), pp. 781-785.

The trial court did not make a determination as to whether the detective's words and actions constituted the functional equivalent of interrogation under *Innis*. However, even if we were to assume the trial court erred when it did not find the detective's words and actions to be the functional equivalent of interrogation, the error is harmless in light of the fact that appellant's statement was cumulative of a non-expert's admissible testimony authenticating the letters as having been written by appellant by proof of handwriting.

OCGA § 24-7-6; *Rogers v. State*, 282 Ga. 659 (9) (653 SE2d 31) (2007). See *Frazier v. State*, 278 Ga. 297 (4) (602 SE2d 588) (2004) (constitutional error in the admission of an inadmissible custodial statement was harmless in light of other unchallenged evidence cumulative of the challenged statement).

3. Appellant maintains the State improperly placed his character in evidence by informing the jury during the State's opening statement that appellant was a convicted felon due to a robbery conviction that had been reduced from a charge of armed robbery, and by introducing a certified copy of the 1999 robbery conviction. The assistant district attorney made the jury aware of appellant's prior conviction when he explained how the State would prove the charge of possession of a firearm by a convicted felon, and the certified copy of the robbery conviction was admitted into evidence at the close of the State's case-in-chief. Defense counsel affirmatively stated he had no objection to the admission of the certified copy of the conviction, and defense counsel voiced no objection to the remark made during the opening statement. The failure to object to the remark now challenged constitutes a waiver of the issue on appeal. *Harris v. State*, 279 Ga. 522 (4) (615 SE2d 532) (2005).

4. Appellant testified and was impeached on cross-examination with the introduction of a certified copy of his prior conviction for possession of a firearm by a convicted felon, and an acknowledgment that he had been convicted of robbery, a certified copy of that conviction having been admitted into evidence earlier. See OCGA § 24-9-84.1 (a). On appeal, he contends reversible error was committed when the trial court failed to instruct the jury without request that they limit their consideration of the prior convictions to the purpose of impeachment only.

In *State v. Byrd*, 255 Ga. 665, 668 (341 SE2d 455) (1986), this Court determined it was not unreasonable to require a trial court, with or without request, to give a limiting instruction on the use of impeaching evidence that had been obtained in contravention of the defendant's constitutional right concerning self-incrimination. However, the Court deemed it "reasonable and proper" to insist upon a request by a defendant who wishes to have the trial court give limiting instructions on the use of impeachment evidence when "evidentiary considerations [which] carry less weight than rights under the Fifth Amendment" are involved. Id. The impeaching evidence at issue, appellant's prior convictions, was not obtained in violation of appellant's constitutional rights. Therefore, in keeping with the distinction set out in *Byrd*, we conclude that the trial court did not err when, without request, it did not instruct the jury to limit its consideration of the impeaching evidence.

5. Appellant contends trial counsel did not provide him with effective assistance of counsel. To prevail on a claim of ineffective assistance of trial counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

*Pruitt v. State*, 282 Ga. 30 (4) (644 SE2d 837) (2007). The combined effects of counsel's errors are considered in determining the prejudice prong of a claim of ineffective assistance of counsel. *Schofield v. Holsey*, 281 Ga. 809, 811, n. 1 (642 SE2d 56) (2007). Appellant cites ten instances of alleged deficient performance that purportedly resulted in prejudice to appellant.

(a) Appellant contends counsel was ineffective when he failed to object to the portions of the State's opening statement in which the assistant district attorney informed the jury that appellant was a convicted felon, and the assistant district attorney's statement that appellant's prior robbery conviction had been reduced from the original charge of armed robbery. Appellant also takes issue with trial counsel's failure to object to the introduction of a certified copy of the robbery conviction which reflected that the initial charge had been armed robbery. At the time of the opening statement, appellant was facing a charge of being a convicted felon in possession of a firearm during the commission of a crime. OCGA § 16-11-133 (b).[2] Accordingly, it was not objectionable to refer to appellant as a convicted felon and trial counsel did not perform deficiently in failing to object to the reference. Furthermore, since appellant testified at his trial, he was subject to impeachment by the introduction of his prior felony convictions for which he was convicted in the ten years prior to trial or for which conviction he was released from prison within the ten years prior to trial. OCGA § 24-9-84.1 (a) (2), (b). Trial counsel testified at the hearing on appellant's motion for new trial that he did not object to the assistant district attorney's opening statement because appellant repeatedly had made it clear to trial counsel that he was going to testify and counsel knew appellant would then be impeached with his prior felony convictions. "As a general rule, matters of reasonable trial strategy and tactics do not

---

[2] The trial court withdrew this charge from the jury's consideration after determining that the felony for which appellant was convicted previously was not one of the felonies enumerated in OCGA § 16-11-133 (b).

amount to ineffective assistance of counsel." *Wright v. State*, 274 Ga. 730, 732 (2) (b) (559 SE2d 437) (2002). Whether to object to the content of an opening statement is a tactical decision (*Caylor v. State*, 255 Ga. App. 362 (2) (566 SE2d 33) (2002)), and trial counsel's reasonable tactical decision not to object to the assistant district attorney's referral to appellant as a convicted felon did not constitute deficient performance.

More problematic are trial counsel's failure to object to the assistant district attorney's opening statement that the robbery conviction was reduced from an initial charge of armed robbery and his failure to object to the introduction of the certified copy of the robbery conviction reflecting that the initial charge against appellant was armed robbery. These occurrences put before the jury irrelevant prior bad conduct — an indictment that charged appellant with armed robbery. OCGA § 24-2-2. At the hearing on the motion for new trial, trial counsel testified he could not recall why he did not object to the admission of the un-redacted robbery conviction. Accordingly, we will assume deficient performance in the failure to object or seek redaction. However, in light of the testimony of the co-indictee, the presence of appellant's fingerprints on the victim's vehicle, and the content of the letters written by appellant to his co-indictee, the assumed deficient performance created little actual prejudice to be considered in our assessment in Division 5 (k), infra, of the collective prejudice stemming from all of counsel's errors. See *Schofield v. Holsey*, supra, 281 Ga. at 811.

(b) Appellant asserts ineffective assistance in trial counsel's failure to object to the statement made in the State's closing argument that the jury could consider appellant's robbery conviction as showing appellant "had the predilection to commit crime before the murder itself." At the hearing on the motion for new trial, trial counsel agreed that the assistant district attorney was not permitted to make such an argument and that the absence of an objection authorized the jury to consider the prior convictions as if they were evidence of prior similar transactions. Trial counsel explained he did not object because "it just accentuates it."

"The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2. Evidence of prior similar transactions committed by a defendant is admissible because it shows that a defendant has a tendency or propensity to react to similar conditions in a similar way. See, e.g., *Biggs v. State*, 281 Ga. 627 (2) (642 SE2d 74) (2007); *Moore v. State*, 286 Ga. App. 313 (3) (a) (649 SE2d 337) (2007). When a prior conviction is admitted to attack the credibility of a testifying

defendant upon the determination of the trial court that the conviction's probative value substantially outweighs its prejudicial effect (OCGA § 24-9-84.1 (a)), the conviction's purpose is limited to an attack on the defendant's credibility and, unless the prior conviction also is admitted as a prior similar transaction, it is impermissible to use the prior conviction to establish the defendant as a bad person with a propensity for crime. See *Head v. State*, 253 Ga. 429 (2) (322 SE2d 228) (1984), overruled on other grounds in *Ross v. State*, 279 Ga. 365 (2) (614 SE2d 31) (2005). See also *Tate v. State*, 289 Ga. App. 479, 480-481 (657 SE2d 531) (2008) (no error where trial court admitted prior conviction to attack defendant's credibility and the State argued the conviction as to the defendant's credibility and not as substantive evidence of defendant's guilt), quoting *United States v. Chilcote*, 724 F2d 1498, 1503 (III) (11th Cir. 1984) (when a prior conviction is introduced to impeach the credibility of a witness, "care must be taken to ensure that the evidence admitted is used only to impeach the . . . witness and not as substantive evidence against the defendant"). While it was not reasonable trial strategy to permit the assistant district attorney to argue to the jury that appellant's prior convictions for robbery and possession of a firearm by a convicted felon established appellant had a propensity to commit crime, in light of the evidence of appellant's guilt — his co-indictee's testimony, the letters he wrote to his co-indictee, and his fingerprint on the window of the victim's vehicle — counsel's deficient performance created little actual prejudice to be considered in our assessment in Division 5 (k), infra, of the collective prejudice of counsel's errors. *Schofield v. Holsey*, supra, 281 Ga. at 811.

(c) Trial counsel did not request an instruction that limited the jury's consideration of appellant's prior convictions to impeachment of appellant. Appellant's convictions for robbery and possession of a firearm by a convicted felon were admitted into evidence for the limited purpose of attacking the credibility of appellant. OCGA § 24-9-84.1 (a). At the hearing on the motion for new trial, trial counsel testified he did not request a limiting instruction because a limiting instruction "may bring attention" to evidence the jury had heard. Where trial counsel testifies that he chose not to seek a limiting instruction because he did not wish to draw attention to the prior convictions, the omission was trial strategy and not evidence of ineffective assistance of counsel. *Jones v. State*, 280 Ga. 205 (2) (b) (625 SE2d 1) (2005). But see *Starling v. State*, 285 Ga. App. 474 (646 SE2d 695) (2007) (trial counsel's failure to obtain a limiting instruction did not fall within the range of reasonable professional conduct).

(d) Trial counsel did not object when the assistant district attorney prosecuting the case introduced himself to a jury panel as a pastor. Trial counsel described the assistant district attorney's action

as "the stupidest thing to ever say to a jury" and concluded it "wasn't worth making a big thing over." On the record before us, trial counsel's reasonable trial strategy not to object does not constitute deficient performance.

(e) Appellant contends trial counsel was ineffective when he failed to object to the assistant district attorney's purported comments on appellant's silence after he invoked his rights under *Miranda v. Arizona.* During the State's cross-examination of appellant, appellant asserted he wished to give the jury the impression that he had been open and fully cooperative with the investigating authorities by answering all their questions up to the point when the detective advised him of his *Miranda* rights. Appellant testified he then refused to sign the document waiving his *Miranda* rights. On rebuttal, the State recalled the detective who testified appellant did not answer questions prior to being administered his *Miranda* warnings and then asked to speak with an attorney. During closing argument, the assistant district attorney informed the jury "you don't get to know about the fact that he invokes *Miranda* until he gets on the stand and lies and says, 'Oh, I cooperated fully.' " At the hearing on the motion for new trial, the trial court ruled that appellant "gratuitously brought up the *Miranda* issue and his refusal to sign" and

> while [the assistant district attorney's comment in closing argument] might have been an improper reference to [appellant] invoking *Miranda*, [appellant] had already made that fact known to the jury, unaided by the State, and thus had himself formed this issue resulting in argument based on his own provided evidence.

Since it was through appellant's testimony that evidence of the administration of *Miranda* warnings and appellant's reaction thereto came to light and since counsel is permitted wide latitude in closing argument and may draw illogical, unreasonable, and absurd conclusions and deductions from the evidence (*Truitt v. State,* 174 Ga. App. 687 (3) (331 SE2d 64) (1985)), we see no deficient performance in trial counsel's failure to object to the assistant district attorney's closing argument.

(f) Appellant takes issue with trial counsel's failure to review appellant's videotaped statement to police until the day of trial. The State decided not to play the videotape for the jury because the audio portion was inaudible. After employing the services of an expert who purportedly made the tape audible, appellate counsel contends the videotape could have been used to impeach the detective concerning his interrogation of appellant. At the hearing on the motion for new

trial, the trial court pronounced the enhanced tape as "basically unintelligible." In light of the trial court's observation, trial counsel did not perform deficiently in failing to review the videotape earlier.

(g) Appellant asserts counsel was ineffective because he failed to seek a continuance when, three days before trial, he received from the State the letters purportedly written by appellant to the co-indictee. Appellant testified at trial that he was not the author of the letters in question. Appellant maintains trial counsel should have obtained a handwriting expert to establish that appellant did not write the letters. Trial counsel testified that appellant never denied before trial having written the letters and counsel did not believe the trial judge would grant a continuance mid-trial. Even were we to assume deficient performance in counsel's failure to seek a continuance, in light of the testimony of appellant's handwriting expert at the hearing on the motion for new trial that he could not state with certainty that appellant did not write the letters, such assumed deficient performance created little actual prejudice to be considered in our assessment in Division 5 (k), infra, of the collective prejudice stemming from all of trial counsel's errors. *Schofield v. Holsey*, supra, 281 Ga. at 811.

(h) Appellant maintains trial counsel rendered ineffective assistance because he did not conduct a "meaningful" cross-examination of appellant's co-indictee. Appellant points to the fact that a live 9mm round of ammunition was found amongst the spent .22-caliber shell casings, and asserts this information should have been used to attack the co-indictee's testimony that he was not armed and did not fire a weapon when he and appellant confronted the victim. The decisions on whether and how to conduct a cross-examination is a strategic and tactical decision (*Van Alstine v. State*, 263 Ga. 1, 3 (426 SE2d 360) (1993)), and trial counsel's decision to forego this line of questioning was reasonable since the jury was aware that shell casings and live ammunition not capable of being used by a single gun were found.

(i) Appellant asserts trial counsel was ineffective because he did not conduct a "meaningful" cross-examination of the State's fingerprint expert.

> [H]ow to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.

*Thomas v. State*, 284 Ga. 647, 650 (3) (b) (670 SE2d 421) (2008). Trial counsel relied on cross-examination and appellant did not establish that trial counsel's tactical decision was unreasonable.

(j) Appellant complains that trial counsel was ineffective because he failed to review the warrant used by the police to arrest appellant on a charge of murder. The warrant contained an allegation that a witness had observed appellant cutting up the victim's credit cards, and appellant believes this information is at odds with the trial testimony that the victim's wallet and its contents were found some time after the victim's death. Even assuming the failure to review the warrant and pursue this theory amounted to deficient performance, in light of the evidence of appellant's guilt — his co-indictee's testimony, the letters he wrote to his co-indictee, and his fingerprint on the window of the victim's vehicle — such assumed deficient performance created little actual prejudice to be considered in our assessment in Division 5 (k), infra, of the collective prejudice stemming from all of trial counsel's errors. *Schofield v. Holsey*, supra, 281 Ga. at 811.

(k) We have set out in Divisions 5 (a), (b), (g), and (j) the instances in which we have found or assumed trial counsel's deficient performance. After considering the combined effect of those deficiencies, we conclude that appellant did not establish there is a reasonable probability that, but for counsel's errors, the outcome of his trial would have been different. *Schofield v. Cook*, 284 Ga. 240, 253 (663 SE2d 221) (2008); *Schofield v. Holsey*, supra, 281 Ga. at 811.

6. In light of the above, appellant's right to due process of law guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the parallel provisions of the Georgia Constitution was not violated.

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., who concurs in judgment only.*

DECIDED FEBRUARY 9, 2009 —
RECONSIDERATION DENIED APRIL 9, 2009.

*Ross & Pines, Noah H. Pines*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, John S. Melvin, Barbara B. Conroy, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.