**THIRD DIVISION**
**ELLINGTON, P. J.,**
**REESE and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2018**

# In the Court of Appeals of Georgia

A18A1247. CLARK v. THE STATE.

GOBEIL, Judge.

Following a bifurcated jury trial, Larry Darnell Clark was convicted in Charlton County Superior Court of four counts of aggravated assault and a single count each of burglary, false imprisonment, possession of a firearm during the commission of a felony, and use of a firearm by a convicted felon.[1] Clark now appeals from the denial of his motion for a new trial, asserting a claim of ineffective assistance of counsel and citing six grounds to support that claim. . He further contends that the trial court erred in failing to charge the jury sua sponte on the lesser

---

[1] Clark was first tried on Counts 1 through 7 of the indictment, which charged him with burglary, false imprisonment, aggravated assault, and possession of a firearm during the commission of a felony. After the jury found Clark guilty of those crimes, he was tried on Count 9 of the indictment, which charged him with use of a firearm by a convicted felon.

offense of reckless conduct and in admitting certain evidence over the objection of trial counsel. We find no error and affirm.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." *Maddox v. State*, 346 Ga. App. 674, 675 (816 SE2d 796) (2018) (citation omitted). So viewed, the record shows that one or two days before the incident in question, Clark's estranged wife, Stephanie Tarpley, obtained a temporary protective order against Clark based on his alleged stalking of her. Late on the afternoon of July 1, 2010, Clark went to Tarpley's apartment and entered the apartment by kicking in the front door. He then moved the refrigerator to block the apartment's entrance and proceeded to hold Tarpley in the apartment at gunpoint. After learning that Clark was at Tarpley's apartment, the couple's teenage daughter, O. T., who had been at a neighbor's home, immediately went to the family apartment. O. T. knew that Clark had previously threatened to kill Tarpley, so when she found the apartment door blocked, O. T. began screaming at her parents to let her in. O. T. heard Clark tell her to get away from the door, and then heard some kind of noise. When O. T. looked down, she saw that she was bleeding and she later

discovered that she had a gunshot wound to her arm, which required surgery. As O. T. walked away from the apartment, she heard more gunshots.

Neighbors contacted police, and officers from both the Folkston Police Department and the Homeland Police Department responded to the scene. Officer Ricky Sikes with the Folkston Police Department testified that he pulled up in front of Tarpley's apartment, exited his marked patrol car, and walked to the car's trunk to retrieve his bullet proof vest. As he did so, four or five shots were fired from the apartment's front window. One bullet landed approximately 6 to 10 feet in front of Sikes and another hit the nearby stair railing. Officer Charles Byerly with the Homeland Police Department offered similar testimony, stating that as soon as the two officers exited their respective vehicles, shots came from the front of the apartment. Both officers testified that they believed they were the shooter's target and that they were afraid they might be killed. The State introduced into evidence a video of the incident recorded by the dashboard camera in Sikes's patrol car. The video shows puffs of smoke coming from the apartment's front window, and Sikes testified that the puffs of smoke coincided with the shots being fired.

Clark remained in Tarpley's apartment until 1:45 a. m. on July 2, and he forced Tarpley to remain with him for most of that time. Tarpley testified that when she first

3

saw Clark in the apartment, he was pointing a gun at her and she was afraid he was going to kill her. She remained in the apartment and did what Clark instructed her to do because he was threatening her with the gun. Additionally, at one point Clark fired a shot towards Tarpley, with the bullet landing in the living room wall.

During her testimony, Tarpley stated that several days after the incident, she found items she believed were related to the crime in her apartment, and she took those items to the Folkston Police Department. Tarpley then identified State's Exhibit 20, which consisted of an empty .9 mm shell casing, a live .9 mm round, and a bullet, as the items she gave to someone at the Folkston Police Department. Tarpley further testified that in August 2010, she gave the Folkston Police Chief a magazine for a gun and some cartridges. According to Tarpley, she could no longer remember where she found any of these items, nor could she remember why she took the gun magazine and cartridges to the police. The police chief testified that the gun magazine and cartridges, which were introduced into evidence as State's Exhibit 30, were given to him by Tarpley in August 2010, and Tarpley told him that she had discovered the items underneath her bed in her apartment.[2]

_____

[2] The chief further testified that on the night of the incident, the SWAT team reported that during their initial sweep of the apartment, they saw bullets and a magazine underneath the bed in the master bedroom. The chief sent an officer back

Special Agent Richard Dial of the GBI was in charge of the investigation into the incident. Dial testified that at the crime scene, police found a bullet lodged in a wall of the apartment, near the area where Tarpley claimed Clark had fired at her. Law enforcement also found bullet holes in the kitchen window, which was the same window shown on the dashboard video. Additionally, police found a .9 mm firearm on top of the dresser in the master bedroom, together with a magazine containing six rounds of live ammunition. Police also recovered six spent .9 mm shell casings inside the apartment. A search of the parking lot revealed a .9 mm bullet hole in a vehicle parked in front of the apartment. Based on their investigation, police found that the trajectory of a bullet fired from the apartment's kitchen window would have landed where they found the bullet hole in the vehicle. Given the location of the vehicle, police concluded that the shooter had been aiming at or towards the police officers.

Dial testified he met with Tarpley at the Folkston Police Department several days after the incident because she had discovered some other items of evidence at her apartment. Dial identified the items in State's Exhibit 20 as the items given to him by Tarpley. According to Dial, Tarpley told him that the shell casing had been discovered beside a closet door in the hallway of her apartment; the unspent round

into the apartment to retrieve the items, but the officer was unable to locate them.

5

had been discovered in the master bedroom; and the spent projectile was found outside the apartment, on the walkway in front of the kitchen window. Defense counsel objected to the admission of this evidence, arguing that Tarpley had not testified as to where she had found the items and the "fact that [she] brought them in [to police] [several] days later . . . we don't know if [the evidence] has anything to do with this case[.]" The trial court overruled this objection.

Dial interviewed Clark at the Folkston Police Department at approximately 4:30 a. m. on July 2, 2010, several hours after the incident ended. During the interview, a recording of which was introduced into evidence and played for the jury, Clark admitted going to Tarpley's apartment armed with a gun he had stolen from a friend the day before. Clark acknowledged that he brought extra ammunition for the gun with him, and explained that he had been planning to kill himself. Clark also admitted that he had kicked in the apartment door, moved the refrigerator to block the door, and fired the gun both towards the door and through the kitchen window. He stated, however, that he did not mean to shoot his daughter and that when he fired out the kitchen window he was not aiming at the police officers.

Clark testified in his own defense and stated that on the day in question, he received a telephone call from one of his daughters, who told him that while she was

6

visiting Clark's's mother in Miami, she had been molested by Clark's brother. The daughter left Clark with the impression that Tarpley was aware of the molestation, but that she had failed to report the incident to Clark. Following this phone call, Clark went to Tarpley's apartment carrying a .9 mm gun purchased for him by a friend approximately two days earlier.[3] Clark identified the .9 mm gun found at the scene and introduced into evidence as the one he brought to the apartment. According to Clark, after moving the refrigerator, he threw his jacket onto the living room sofa, which caused the .9 mm gun he had been carrying in his pocket to fall onto the floor. Rather than picking up the gun, Clark went into the master bedroom and retrieved a .380 caliber gun he and Tarpley kept in the dresser. When Clark returned to the living room, Tarpley was holding the .9 mm gun. . The couple began to argue and when Clark attempted to wrestle the gun away from his wife, the gun discharged. The couple continued to struggle over the gun, with the struggle making them travel towards the kitchen at the front of the apartment and, as they did so, the gun discharged "a couple more times."

_____

[3] According to Clark, he had obtained the gun because he was planning to kill himself.

Clark stated that no shots were fired after he discovered there were police officers in front of the apartment and all of the gunshots were fired during the struggle over the gun. Clark could not recall what had happened to the .380 caliber weapon, but he thought he had returned it to the dresser drawer. Additionally, Clark testified that Tarpley was free to leave the apartment at anytime, but that she never attempted to do so.

When asked why parts of his trial testimony conflicted with or contained details not included in the responses he gave Agent Dial in his post-arrest interview, Clark responded that at the time of the interview, he was trying to tell Dial what Clark assumed law enforcement wanted to hear in the hopes he would get bond. He further explained that he wanted to get out of jail so that he could drive to Miami and kill the brother who had allegedly molested his child.

During the State's rebuttal case, Dial testified that during his interview with Clark, Clark never stated that his brother had molested one of his children or that there had been a second gun in the apartment. Nor did Clark mention a struggle over the gun or indicate that Tarpley had caused the gun to discharge. Instead, Clark indicated that he had fired all of the shots in question. Finally, Dial stated that police

8

did not recover a second gun from the apartment nor did they find any .380 caliber shell casings in the apartment or the surrounding area.

After hearing the foregoing evidence, the jury found Clark guilty of the crimes charged in Counts 1 through 7 of the indictment. Clark was then tried on Count 9 of the indictment, which charged him with use of a firearm by a convicted felon.[4] During that trial, the State introduced into evidence a certified copy of Clark's 1993 federal conviction for carjacking and use of a firearm during the commission of a crime of violence. This document included a copy of the indictment under which Clark had pled guilty in 1993, and the indictment outlined the facts serving as the basis for the two charges on which Clark was convicted.

During the State's brief closing argument, the prosecutor told the jurors they could review the certified copy of the 1993 conviction and that when they did so, they would see that Clark had previously used a firearm to perpetrate a carjacking. The prosecutor then stated:

> I don't like people using guns and assaulting [other] people with [them].
> And I especially don't like it when they've done it in the past. Mr. Clark

---

[4] The State elected not to prosecute Clark on Count 8 of the indictment, which charged him with possession of a firearm by a convicted felon, in violation of OCGA § 16-11-131.

didn't learn his lesson the last time. We're going to hold him accountable this time [,] too [,] if y'all go ahead and convict him on this count."

The jury found Clark guilty of Count 9, and the trial court entered a judgment of conviction on both verdicts. Clark then filed a motion for a new trial. Following an evidentiary hearing, the trial court denied that motion. This appeal followed.

1. Although Clark does not contest the legal sufficiency of the evidence of his guilt, in accordance with this Court's general practice, we have reviewed the record and conclude that the evidence presented at trial authorized the jury to find Clark guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Wade v. State*, 305 Ga. App. 819, 821 (701 SE2d 214) (2010) ("[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld) (citation and punctuation omitted). See also OCGA § 16-5-20 (a) (defining assault); OCGA § 16-5-21 (a) (defining aggravated assault); OCGA § 16-5-41 (a) (defining false imprisonment); OCGA § 16-7-1 (b) (defining burglary); OCGA § 16-11-106 (b) (defining possession

of a firearm during the commission of a crime); OCGA § 16-11-133 (b) (defining use of a firearm by a convicted felon).

2. Clark contends he received ineffective assistance of counsel, and he raises six separate grounds in support of this claim. To prove that one or more of these grounds resulted in ineffective assistance, Clark must prove both that his lawyer's performance was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If Clark cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong. *Causey v. State*, 319 Ga. App. 841, 842 (738 SE2d 672) (2013).

With respect to the first prong of the *Strickland* test, deficient performance, Clark must show that his attorney performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in light of prevailing professional norms. *Strickland*, 466 U. S. at 687-688 (III) (A). To demonstrate that he suffered prejudice as a result of his attorney's performance, Clark must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). "This burden,

11

though not impossible to carry, is a heavy one." *Arnold v. State*, 292 Ga. 268, 270 (2) (737 SE2d 98) (2013), citing *Kimmelman v. Morrison*, 477 U. S. 365, 382 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986).

(a) Clark asserts that trial counsel was ineffective for failing to object to the admission of State's Exhibit 30 (the magazine and cartridges Tarpley turned over to police approximately one month after the incident in question). Clark claims that this evidence was inadmissible because the State failed to show that the evidence was relevant to the charged crimes and because its prejudicial effect far outweighed its probative value. Assuming arguendo that any objection by trial counsel would have been successful, however, Clark cannot show that he was prejudiced by the admission of this evidence.

The evidence against Clark was overwhelming. It included the fact that Tarpley had obtained a temporary protective order against Clark because of his threats against her and that Clark had previously threatened to kill Tarpley. Additionally, the State introduced the eyewitness testimony of the four victims, the video from the police car, and Clark's videotaped interview with Agent Dial, during which Clark admitted to firing all of the shots in question. Moreover, Clark admitted at trial that he had purchased or stolen the gun used in the assaults, had gone to Tarpley's apartment

12

armed with the gun and extra ammunition, and had forced his way into the apartment and blocked the door to prevent anyone else from entering. In light of this evidence, Clark cannot show that in the absence of State's Exhibit 30, there is a reasonable probability that the jury would have acquitted him. See *Paschal v. State*, 335 Ga. App. 411, 416 (3) (780 SE2d 681) (2015); *Lakes v. State*, 314 Ga. App. 10, 16 (5) (e) (722 SE2d 859) (2012).

(b) Relying on the Supreme Court of Georgia's decision in *Ross v. State*, 279 Ga. 365 (614 SE2d 31) (2005), Clark argues that trial counsel performed deficiently by failing to stipulate to Clark's's status as a convicted felon, thereby allowing the State to introduce Clark's 1993 conviction to prove that status. *Ross* involved a defendant tried in a single trial on multiple felony counts, including a count of possession of a firearm by a convicted felon. Defense counsel offered to stipulate to the defendant's status as a convicted felon, but the trial court rejected the offer and allowed the State to introduce a certified copy of the defendant's conviction for enticing a child for indecent purposes. Finding that "the nature of [defendant's] prior conviction . . . raise[d] the risk of a verdict tainted by improper considerations" and "[b]ecause the evidence was unnecessary to prove anything other than [defendant's] status as a convicted felon," the Supreme Court held that the trial court had abused

13

its discretion in rejecting the defendant's offer to stipulate to his previous felony conviction. 279 Ga. at 368 (2).

Despite Clark's assertions to the contrary, the rationale of *Ross* does not apply where, as here, the defendant is afforded a bifurcated trial – i.e., the defendant is not tried on the charge of use or possession of a firearm by a convicted felon until after the jury has decided his guilt or innocence on the other, unrelated felony charges in the indictment. See *Grimes v. State*, 280 Ga. 363, 365-366 (4) (628 SE2d 580) (2006) ("if the charge of possession of a firearm by a convicted felon is unrelated to any other count for which the defendant is to be tried, the correct remedy is for the trial court to bifurcate the proceedings on a proper motion"). Given this fact, Clark has failed to show that the trial court would have been obligated to accept any proffered stipulation that Clark was a convicted felon.[5] Accordingly, we find that trial counsel did not perform deficiently in failing to stipulate to Clark's status as a convicted felon.

(c) Clark further asserts that trial counsel should have objected to the closing argument the State made during his trial for use of a firearm by a convicted felon.

[5] Moreover, as trial counsel pointed out at the motion for new trial hearing, any offer to stipulate to Clarke's status as a convicted felon would have been, in essence, an offer to plead guilty to Count 9.

14

Specifically, Clark asserts that the prosecutor's closing argument improperly encouraged the jury to view Clark's prior felony conviction as a similar transaction, as the prior felonies also involved the use of a firearm. Clark also contends that the closing argument encouraged the jury to convict him on Count 9 simply because of his prior convictions.

With respect to Count 9, the State had to prove: (1) that Clark had used a firearm while committing one or more of the felonies charged in Counts 1 through 7 of the indictment; and (2) that at the time of the charged crimes, Clark was a convicted felon. See OCGA § 16-11-133 (b) (1).[6] At the time the prosecutor made the closing argument at issue, the jury had already found that Clark had used a firearm to commit aggravated assault against four individuals. And the evidence showing Clark's status as a convicted felon at the time of the charged crimes was unrefuted. Thus, even assuming trial counsel should have objected to any part of the prosecutor's closing argument, Clark cannot show that "but for counsel's failure to object, there was a reasonable probability that he would not have been convicted" on

---

[6] OCGA § 16-11-133 makes it illegal for "[a]ny person who has previously been convicted of or who has previously entered a guilty plea to . . . any felony involving the use or possession of a firearm" to "have on or within arm's reach of his or her person a firearm during the commission of . . . [a]ny crime against or involving the person of another." OCGA § 16-11-133 (b) (1).

15

Count 9. *Sweet v. State*, 278 Ga. 320, 326 (8) (602 SE2d 603) (2004). See also *Phillips v. State*, 285 Ga. 213, 220 (5) (b) (675 SE2d 1) (2009).

(d) As noted above, during Clark's trial on Count 9, the State introduced into evidence a certified copy of Clark's 1993 conviction (State's Exhibit 34). Attached to that conviction was the indictment under which Clark had been charged in the 1993 case. On appeal, Clark contends that trial counsel was ineffective for failing to object to or seek the redaction of this document, which set forth the details of the 1993 crimes.[7]

We assume for the sake of argument that trial counsel's failure to object to or seek redaction of State's Exhibit 34 constituted deficient performance. See *Phillips*, 285 Ga. at 219 (5) (a) (deficient performance assumed where trial counsel failed to object to or seek the redaction of a certified copy of defendant's conviction for robbery, where that copy showed that defendant had initially been charged with armed robbery). Given the strength of the evidence against Clark on Count 9,

---

[7] In addition to the crimes of which Clark was convicted, the indictment charged Clark with one count of robbery and two counts of possession of a firearm by a convicted felon. The possession of a firearm by a convicted felon charges were based on Clark's December 1992 conviction for aggravated assault and obstructing justice.

16

however, Clark cannot show that he suffered prejudice as a result of this assumed deficient performance. Id.

(e) Clark further asserts that trial counsel was ineffective in several ways for failing to object to the court's jury instructions at the second part of his trial. In instructing the jury with respect to Count 9 of the indictment, the trial court stated:

> [T]he court's instruction given to you previously applies with regard to this count of the indictment. I won't repeat that entire instruction. But with regard to Count 9, I will instruct you [that] you, Ladies and Gentlemen, have just this morning found that the defendant, Larry Darnell Clark, committed . . . felony offenses against another person. Now, if you find that Mr. Clark has previously been convicted . . . or previously entered a guilty plea to any crime against or involving the person of another and that [such a crime was] a felony, . . . you would be authorized to find him guilty of the felony count of Count 9 in this indictment.
>
> If you find . . . some reasonable doubt or some doubt of the law in your mind, then you should acquit him. But if you find that he had previously been convicted of a felony as I just described to you and you found now that he has committed a felony [in] the Charlton County cases, you would be authorized to convict him.

17

(i) Clark first asserts that counsel should have objected to the trial court's failure to recharge the jury on both the burden and the standard of proof.[8] We disagree.

The record shows that the trial lasted two days. On the morning of the second day, counsel made closing arguments, and the court then charged the jury. After the jury returned its verdict on Counts 1 through 7, the parties immediately proceeded to trial on Count 9. The jury was then charged on Count 9 no more than two hours after being read the charge on counts 1 through 7, which included general charges on concepts such as the burden and standard of proof. Under these circumstances, any failure by counsel to request that the jury be charged a second time on the burden and standard of proof was "harmless[,] considering the short period of time between the two charges." *Ballard v. State*, 268 Ga. App. 55, 59 (4) (601 SE2d 434) (2004) (failure to recharge the general instructions constituted harmless error where, during the second part of a bifurcated trial, the court asked the jury "to recall the court's

_____

[8] Clark also contends that trial counsel should have asked the trial court to re-charge the jury on its obligation to consider each count of the indictment separately when determining Clark's guilt or innocence on each charge. During the second phase of the trial, however, the jury was only determining Clark's guilt or innocence as to a single count of the indictment. Accordingly, this assertion is entirely without merit.

18

previous preliminary instructions and its other instructions at the close of the first part of the bifurcated trial," and less than 24 hours had elapsed between the two charges) (citation and punctuation omitted).

(ii) Clark next asserts that trial counsel should have objected to the trial court's statement that the jury had "just this morning found that . . . Clark . . . committed a felony offense or offenses against another person." Clark contends that this statement constituted an improper comment on the evidence, in violation of OCGA § 17-8-57.[9] Specifically, Clark argues that the court's statement essentially instructed the jury that the State did not have to prove an essential element of OCGA § 16-11-133 (b) (1) – that Clark had used a firearm while committing "[a]ny crime against or involving the person of another." This argument is unpersuasive.

During the first part of the trial, the jury was instructed that it could convict Clark of the charges of aggravated assault only if it found that Clark had assaulted another person with a deadly weapon. The court further instructed the jury that it could convict Clark of Count 7 (possession of a firearm during the commission of a

---

[9] That statute provides, in relevant part, that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57 (a) (1).

felony) only if it found that Clark had used a firearm against another person during the commission of a felony. Thus, the statement which Clark now claims was an improper comment on the evidence was simply an accurate statement of fact by the trial court. Trial counsel, therefore, did not perform deficiently in failing to object to the statement. See *Trigger v. State*, 275 Ga. 512, 515 (4) (570 SE2d 323) (2002), overruled on other grounds, *Wilson v. State*, 277 Ga. 195 (586 SE2d 669) (2003) (in trial for possession of a firearm by a convicted felon, the court's "simply stating [in its charge to the jury] the legal proposition that a certain crime is a felony did not constitute an improper comment on the evidence").

(iii) Clark further argues that trial counsel should have objected to the trial court's failure to define the term "felony" for the jury, as without that instruction, the jury could not determine whether the 1993 crimes to which Clark pled guilty were felonies. Again, we disagree. State's Exhibit 34 (the certified copy of Clark's 1993 conviction), included the indictment under which Clark pled guilty as well as the certification of Clark's lawyer with respect to scheduling of the 1993 case. And the scheduling document makes clear that the crimes charged in the 1993 indictment were felonies. Given that State's Exhibit 34 was provided to the jury during their

20

deliberations, the jury had evidence from which it could determine that the 1993 crimes constituted felonies.

(iv) Finally, Clark contends that trial counsel was ineffective for failing to request a charge limiting the use of State's Exhibit 34. Put another way, Clark asserts that trial counsel should have requested that the jury be instructed that they could consider the exhibit only for the purpose of determining whether Clark was a convicted felon. Given that this was a bifurcated trial, however, there was no other purpose for which the jury could use State's Exhibit 34. Accordingly, a limiting instruction was not necessary and trial counsel did not perform deficiently in failing to request such an instruction.

(f) Finally, Clark argues that trial counsel performed deficiently when he failed to request a jury charge on the lesser included offense of reckless conduct. To support this claim, Clark relies on the legal rule that "[a] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser [crime]." *Allaben v. State*, 299 Ga. 253, 257 (3) (a) (787 SE2d 711) (2016) (citation and punctuation omitted). At the hearing on Clark's motion for a new trial, however, trial counsel testified he made a strategic decision not to request to charge on reckless conduct, as such a charge would not have worked with the

21

theory of defense. Counsel explained that Clark's own testimony, and therefore the theory of defense, was that it was Tarpley, rather than Clark, who was responsible for firing the .9 mm gun. Although Clark acknowledged that he struggled with Tarpley for the gun in an effort to defend himself, counsel believed that such conduct "really would not even have arisen to reckless conduct. . . . [Under the theory of defense, Clark] would have been . . . not guilty . . . of either [crime.]"[10]

Given the strategic nature of trial counsel's decision, it "can provide no grounds for [an ineffective assistance claim] unless it was so patently unreasonable that no competent attorney would have chosen it." *Mantooth v. State*, 303 Ga. App. 330, 336 (1) (b) (693 SE2d 587) (2010) (citation and punctuation omitted). And it is Clark who bears the burden of rebutting the strong presumption that this strategy was a reasonable one, made in the exercise of reasonable professional judgment. *Thornton v. State*, 301 Ga. App. 784, 793 (4) (689 SE2d 361) (2009). In light of trial counsel's testimony regarding the reasons underlying his decision not to request to charge on

[10] Under Georgia law, a person is guilty of reckless conduct where he "causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." OCGA § 16-5-60 (b).

22

reckless conduct, Clark cannot carry this burden. See *Wells v. State*, 295 Ga. 161, 166 (2) (b) (758 SE2d 598) (2014) ("the decision not to request a jury charge on a lesser included offense in order to pursue an 'all-or-nothing' defense is a matter of trial strategy, and reasonable trial strategy, whether wise or unwise, generally does not amount to ineffective assistance of counsel") (citation and punctuation omitted); *Taul v. State*, 290 Ga. App. 288, 293 (4) (b) (659 SE2d 646) (2008) (trial counsel's decision to forgo requesting a charge on reckless conduct and present an "'all or nothing' defense for the aggravated assault charge" was a matter of reasonable trial strategy).

3. Under Georgia law, a "trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge." *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). Relying on *Tarvestad*, Clark asserts that the trial court erred in failing to charge the jury sua sponte on the lesser included offense of reckless conduct, as that represented his sole defense. We find no error.

*Tarvestad* involved a defendant's assertion of the affirmative defense of justification, pursuant to OCGA §16-3-20. We therefore view *Tarvestad* as standing for the proposition that a trial court must charge the jury on a defendant's legal

23

affirmative defense, such as those found in OCGA §16-3-20, et seq. See OCGA § 16-3-28 ("[a] defense based upon any of the provisions of this article is an affirmative defense").

> With a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the intent all defenses which have been held to be statutory affirmative defenses meet these criteria, i.e., justification, self-defense or defense of others, rendering assistance to law enforcement officers, defense of habitation, defense of property other than habitation, entrapment, and coercion.

*McClure v. State*, ___ Ga. App. ___ (2) (815 SE2d 313) (2018) (citation and punctuation omitted).

A claim that the State has proved only a lesser included offense of the charged crime, however, does not constitute a legal affirmative defense. Accordingly, *Tarvestad* does not support the proposition that a trial court is required to charge on a lesser included offense, even in the absence of a request for such a charge.[11] See

---

[11] Compare *Strozier v. State*, 254 Ga. App. 528, 530 (3) (562 SE2d 832) (2002) (assuming without deciding that a lesser included offense can constitute a "sole defense" under *Tarvestad*); *Rogers v. State*, 247 Ga. App. 219, 222 (4) (543 SE2d 81) (2000) (same).

*Seay v. State*, 276 Ga. 139, 140 (2) (576 SE2d 839) (2003) ("[a]bsent a written request for a charge on a lesser included offense, made at or before the close of the evidence, the failure to so charge is not error"). Here, Clark neither requested a jury charge on reckless conduct as a lesser included offense nor objected to the charge as given. We therefore review the failure to charge on reckless conduct for plain error. See *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013).

"A failure to charge amounts to plain error only to the extent that the failure to charge was erroneous, the error was obvious, the failure to charge likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Burke v. State*, 302 Ga. 786, 789 (2) (809 SE2d 765) (2018) (citation and punctuation omitted). "[P]lain-error analysis, which must be distinguished from harmless-error analysis, requires the appellant to make and affirmative showing that the error probably did affect the outcome below." *Shaw*, 292 Ga. at 873 (2) (citations and punctuation omitted). In this case, there was no evidence showing that Clark's firing a gun at any of the assault victims was negligent, rather than intentional. Moreover, Clark's own testimony, and therefore the theory of defense, was that Clark was not responsible for the firing of the gun. Given that a charge of reckless conduct was inconsistent with Clark's theory of defense and

25

was otherwise unsupported by the evidence, we find no obvious error in the trial court's failure to charge on that lesser included offense. See *Grant v. State*, 257 Ga. App. 678, 681 (1) (c) (572 SE2d 38) (2002) (charge on reckless conduct as a lesser included offense of aggravated assault was not warranted in the absence of any evidence showing that the charged conduct was "anything other than intentional").

4. In his final enumeration of error, Clark asserts that the trial court erred in admitting, over Clark's objection, State's Exhibit 20 (consisting of an empty .9 mm shell casing, a live .9 mm round, and a bullet). Any error in the admission of this evidence, however, provides no basis for reversal if the error was harmless. *Johnson v. State*, 307 Ga. App. 791, 793 (706 SE2d 150) (2011). "The test for harmful error is whether it is 'highly probable' that the error contributed to the judgment." *Martinez v. State*, 306 Ga. App. 512, 525 (5) (702 SE2d 747) (2010) (citation and punctuation omitted).

As noted supra in Division (2) (a), the evidence against Clark was overwhelming. Given the significant evidence of Clark's guilt, even if the admission of State's Exhibit 20 was erroneous,"it cannot be said that any error in the admission of [that] evidence likely affected the outcome below." *Gates v. State*, 298 Ga. 324, 328 (3) (781 SE2d 772) (2016). See also *Lunsford v. State*, 260 Ga. App. 818, 823 (4)

26

(581 SE2d 638) (2003) (erroneous admission of evidence constituted harmless error "in light of the overwhelming evidence" of the defendant's guilt).

For the reasons set forth above, we affirm the trial court's denial of Clark's motion for a new trial.

*Judgment affirmed. Ellington, P. J., and Reese, J., concur.*