**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 30, 2013**

# In the Court of Appeals of Georgia

A13A0808, A13A0809. HARRIS v. THE STATE.

Boggs, Judge.

Rodney Harris was charged in one indictment with armed robbery, aggravated assault, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, and carrying a concealed weapon, arising out of a May 28, 2009 incident. In a second indictment, Harris was charged with armed robbery, aggravated assault, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, carrying a concealed weapon, obstruction of an officer, and possession of less than an ounce of marijuana, arising out of a June 3, 2009 incident. At the end of a trial on both indictments, a jury found Harris guilty on all counts. Following the denial of his motion for new trial and amendments thereto, Harris now appeals, contending that the trial court erred in limiting his

counsel's cross-examination of a witness and in sentencing him as a recidivist. He also asserts that he was denied the effective assistance of counsel. Having reviewed these claims, we find no error and affirm.

Construed in favor of the verdict, the evidence reveals that on May 28, 2009, two armed men entered a BP convenience store, pointed their weapons at the clerk and ordered him to give them the money from the cash register. After the clerk complied, the two men "ran out the door." Two days after the robbery, an investigator presented the clerk with a photographic lineup of six individuals. The clerk identified Harris as the robber who "cuss[ed]" him and took the money.

On June 3, 2009, two armed men wearing black or grey "hoodie" sweatshirts, entered a Citgo convenience store, pointed guns at the clerks, and ordered one of them to "open the register and give them the money." A woman waiting outside for her husband saw the men, one carrying a gun, come out of the convenience store, and observed them get into a dark-colored SUV. The woman followed the SUV as she called police.

Police responded to the scene and executed a stop of the SUV. Harris, the front seat passenger, and another occupant of the vehicle fled. The driver was taken into custody, and after a foot chase, Harris was apprehended. The third occupant was not

2

found. Harris was wearing a cap and had a considerable amount of cash on his person. In the vehicle, officers found two firearms under the front passenger seat and under the rear portion of the driver's seat, a gray "hoodie" sweatshirt in the rear seat, a blue cap on the floor board of the back seat, and a letter addressed to Harris. A small bag of marijuana was found down an embankment in the area where Harris fled. A video recording of the robbery was admitted into evidence. It depicts two armed men, one wearing a light gray sweatshirt and a tan cap, and another wearing a dark gray sweatshirt and a blue cap.

1. Harris contends that the trial court erred in "prohibiting defense counsel from fully cross-examining [a] state witness regarding photo lineup procedures." Attached to the photographic lineup was a second page showing the dates of birth of those depicted. During counsel's questioning of the investigator concerning the birth dates, the trial court ruled sua sponte that it would not allow the line of questioning because "the date of birth[ ] read out is not truly accurate, because you don't know when the picture was taken in that person's life." Harris argues that his right to a fair trial was prejudiced because counsel was not allowed to confirm with the investigator that he was the oldest, tallest and heaviest person among the six photographs in order to show that the lineup "could lead to tainting the victim's selection of a suspect."

3

The record, however, shows that the trial court ruled only that counsel could not ask the witness to state the date of birth for each person in the lineup.

> Although the Sixth Amendment right to confrontation secures the right of cross-examination, the right of cross-examination is not an absolute right that mandates unlimited questioning by the defense. To the contrary, trial courts retain wide latitude to impose reasonable limits on cross-examination . . . . The permissible scope of cross-examination is committed to the sound discretion of the trial court, and we review a limitation of the scope of cross-examination only for abuse of discretion.

(Citations and punctuation omitted.) *Nicely v. State*, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012). Here, counsel was not prohibited from making any argument concerning the height and weight of those depicted in the lineup, and we cannot say the trial court abused its discretion in not allowing testimony concerning the birth dates on the ground it could confuse the jury because there was no indication of the ages of those in the lineup at the time the photographs were taken. See id.

2. Harris argues that the trial court erred in sentencing him as a recidivist. The record reveals that the trial court considered Harris' 1999 conviction for armed robbery, and on the armed robbery counts here sentenced him "to life in prison without parole under [OCGA §] 17-10-7 (b) (2)." That Code section provides in part: "Any person who has been convicted of a serious violent felony . . . and who after

4

such first conviction subsequently commits and is convicted of a serious violent felony for which such person is not sentenced to death shall be sentenced to imprisonment for life without parole." Armed robbery is listed as a "serious violent felony." OCGA § 17-10-6.1 (a) (2).

Harris argues that the State "used up" the prior 1999 armed robbery conviction when it used that conviction as the basis for the charges of possession of a firearm by a convicted felon, and could not thereafter also use the prior conviction for recidivist sentencing.[1] In support of his argument, Harris cites this court's decision in *Arkwright v. State*, 275 Ga. App. 375 (620 SE2d 618) (2005). But *Arkwright* is inapplicable because it involves the application of OCGA § 17-10-7 (a), rather than subsection (b) (2) at issue here. Id. at 376-378. Our court held in *King v. State*, 169 Ga. App. 444 (313 SE2d 144) (1984), that the State cannot use "the prior felony conviction required

[1]Harris also complains that the introduction of two other exhibits was improper because they "did not contain evidence of felony 'convictions'". One exhibit was Harris' 1996 indictment for theft by receiving, and the other Harris' 1992 guilty plea on two counts of burglary. At the hearing on the motion for new trial, both the State and the trial court agreed that these exhibits should not have been admitted. As stated by the trial court in denying Harris' motion for new trial, the court did not consider those exhibits for purposes of sentencing Harris. The court sentenced Harris pursuant to OCGA § 17-10-7 (b) (2) for a previous conviction for a "serious violent felony," which here could only be Harris' prior conviction for armed robbery. See OCGA § 17-10-6.1 (a) (2). Harris therefore cannot show any harm resulting from the introduction of these exhibits.

5

to convict a convicted felon for being in possession of a firearm, and then use the same prior conviction to enhance the sentence to the maximum punishment for the offense under the repeat offender statute." Id. The Georgia Supreme Court recently explained the rationale for this holding: "the application of OCGA § 17-10-7 (a)[2] eviscerates the sentencing range of one to five years set forth in OCGA § 16-11-131 [(possession of a firearm by a convicted felon)] because the trial court is forced to impose a five-year sentence." *State v. Slaughter*, 289 Ga. 344, 346 (711 SE2d 651) (2011). In other words, the sentencing range of one to five years is eliminated by the requirement of OCGA § 17-10-7 (a) that a defendant "shall be sentenced to undergo the *longest period of time prescribed* for the punishment of the subsequent offense." (Emphasis supplied.) Therefore, a prior felony conviction cannot be used by the prosecution to convict for possession of a firearm by a convicted felon *and* to enhance a sentence for that crime under OCGA § 17-10-7 (a). Id.

---

[2]This subsection provides in part: "any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted. . . ."

6

Contrary to Harris' argument that the prior armed robbery conviction was "used up," this court recently held in *Washington v. State*, 311 Ga. App. 518 (716 SE2d 576) (2011) that,

> [t]he rule set out in *King* is not founded on the idea that the defendant's possession of a firearm is "used up" by its consideration under one statute and therefore not available under the other. Rather, the reason for this narrow rule is that to hold otherwise would eviscerate the sentencing range prescribed by the legislature for possession of a firearm by a convicted felon.

Id. at 519.

Here, the trial court sentenced Harris pursuant to OCGA § 17-10-7 (b) (2) which allows for sentence enhancement based upon a second conviction for a *serious violent felony* following a prior conviction for a *serious violent felony*. The court sentenced Harris as a recidivist for his convictions for armed robbery based upon his prior conviction for armed robbery. The application of OCGA § 17-10-7 (b) (2) therefore could not eviscerate the sentencing range for Harris' conviction for possession of a firearm by a convicted felon, because subsection (b) (2) applies only to enhance the sentence for a subsequent conviction for a serious violent felony, and

7

possession of a firearm by a convicted felon is not a "serious violent felony" as defined in OCGA § 17-10-6.1.

Harris also relies on *Wyche v. State*, 291 Ga. App. 165 (661 SE2d 226) (2008). In *Wyche*, the defendant was convicted of armed robbery, kidnapping, and possession of a firearm by a convicted felon. Id. Wyche complained, as Harris does here, that the State "used up" his prior felony conviction to prove the charge of possession of a firearm by a convicted felon. Id. at 167 (3). In support of the prior conviction, the state relied upon a nolo contendere plea to a charge of robbery with a deadly weapon. Id. And, as in this case, the trial court sentenced Wyche to life without parole on the armed robbery count pursuant to OCGA § 17-10-7 (b) (2). Id. at 167 (3). In reversing Wyche's conviction for possession of a firearm by a convicted felon, our court, citing *King*, held that a prior conviction cannot be used to support both Wyche's recidivist sentencing and his conviction for possession of a firearm by a convicted felon, and that moreover, a nolo contendere plea could not serve as proof of a prior conviction.

Our conclusion in *Wyche* was incorrect. As explained in *Slaughter* and *Washington*, the rationale for the *King* holding is *not* that the prior conviction was "used up" to prove the charge of possession of a firearm by a convicted felon and therefore cannot be used again for recidivist sentencing generally. Rather, the

8

rationale is that a prior conviction used to prove possession of a firearm by a convicted felon cannot also be used to enhance *the sentence for possession of a firearm by a convicted felon* under OCGA § 17-10-7 (a), because to do so would eviscerate the sentencing range prescribed for that crime. The narrow holding in *King* simply does not apply to the separate provision of OCGA § 17-10-7 (b) (2). And we therefore disapprove of *Wyche* to the extent it holds to the contrary.[3]

3. In three enumerations, Harris contends that he received ineffective assistance of counsel. He argues that counsel was ineffective in failing to object to the court's "limitation of her cross-examination" of the investigator concerning the photographic lineup, in failing to object to the admission of prior felony convictions for recidivist sentencing purposes, and in failing to object to the photographic lineup before and during trial.

_____

[3]In *Wyche*, we also cited *Allen v. State*, 268 Ga. App. 519 (602 SE2d 250) (2004), which involved the application of OCGA § 17-10-7 (a). Id. at 522 and 534 (6). Although we improperly analyzed the issue by concluding that the State "used up" its evidence of the prior conviction to support the convictions for possession of a firearm by a convicted felon, see *Washington*, supra, 311 Ga. App. at 519, the result was correct because as explained by the Georgia Supreme Court in *Slaughter*, a prior felony conviction cannot be used by the prosecution to convict for possession of a firearm by a convicted felon *and* to enhance a sentence under OCGA § 17-10-7 (a). We must nevertheless disapprove of that portion of our prior opinion in *Allen* that applies the wrong analysis.

9

> To prevail on a claim of ineffective assistance, [Harris] must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, [Harris] must prove that [ ]he performed h[is] duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms . . . And to show that he was prejudiced by the performance of his lawyer, [Harris] must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, [supra,] 466 U. S. at 694 (III) (B) . . . This burden, though not impossible to carry, is a heavy one.

(Citations and punctuation omitted.) *Arnold v. State*, 292 Ga. 268, 269-270 (2) ( 737 SE2d 98) (2013). "[A]n insufficient showing on either [*Strickland*] prong relieves the reviewing court of the need to address the other prong." (Citation and punctuation omitted.) *Allen v. State*, 286 Ga. 392, 398 (5) (687 SE2d 799) (2010).

(a) As we have held in Division 1 that the trial court did not abuse its discretion in limiting counsel's cross-examination concerning the birth dates of those depicted in the lineup, Harris' claim of ineffectiveness on this issue is without merit. See *Castillo v. State*, 281 Ga. 579, 585 (7) (c) (642 SE2d 8) (2007). Moreover, Harris has

failed to show that, had counsel not been limited in her attempt to question the investigator regarding the birth dates, there is a reasonable likelihood that the outcome of the trial would have been different.

(b) Harris complains that trial counsel was ineffective in failing to object to the admission of his prior felony convictions for purposes of recidivist sentencing. But as explained in Division 2, that the trial court did not err in sentencing Harris as a recidivist. Counsel therefore was not ineffective for failing to make a meritless objection. See *Willis v. State*, 309 Ga. App. 414, 422 (9) (c) (710 SE2d 616) (2011).

(c) Harris argues that counsel was ineffective in failing to file a motion to suppress the photographic lineup. He contends that the lineup was impermissibly suggestive and that there was a likelihood of irreparable misidentification.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and footnote omitted.) *Mohammed v. State*, 295 Ga. App. 514, 516-517 (672 SE2d 483) (2009). This Harris has failed to do. He has presented no argument concerning how the lineup was impermissibly suggestive. And the array presented at trial shows six photographs of males of the same race with similar complexions,

11

hairstyles and facial hair. The investigator testified concerning how he prepares lineups and that the lineup in this case did not exactly match the "defendant's height, weight, and age," but contained the photographs of individuals who looked "very similar." He stated further that the victim of the first robbery identified Harris from the lineup "immediately and without hesitation." Under these circumstances, Harris has failed to show that the lineup would have been suppressed had counsel filed a motion. See id.; see also *Rivers v. State*, 283 Ga. 1, 5 (3) (b) (655 SE2d 594) (2008) (defendant did not establish ineffective assistance where no showing that identification testimony would have been suppressed had counsel so moved); *Jackson v. State*, 243 Ga. App. 289, 293 (3) (h) (531 SE2d 747) (2000) (no evidence lineup impermissibly suggestive).

*Judgments affirmed. Ellington, C. J., Andrews, P. J., Barnes, P. J., Phipps, P. J., Doyle, P. J., Miller, Dillard, McFadden, Ray, Branch and McMillian, JJ., concur.*