**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2018**

# In the Court of Appeals of Georgia

A17A1869. PEFINIS v. THE STATE.

BARNES, Presiding Judge.

Peter Pefinis, Jr. was indicted on two counts of serious injury by vehicle, driving under the influence less safe (drugs), and reckless driving. Following a jury trial, Pefinis was found guilty of one count of serious injury by vehicle and reckless driving. The two counts were merged for sentencing, and Pefinis was sentenced to fifteen years, to serve ten. Following the denial of his motion for new trial, as amended, he appeals and contends that the evidence was insufficient and that trial counsel was ineffective. Following our review, we affirm.

1. Regarding Pefinis' contention that the evidence was insufficient to sustain his convictions,

> [o]n appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes

beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895 (783 SE2d 400) (2016).

So viewed, the facts pertinent to this appeal demonstrate that on October 8, 2010, the victim was driving westbound on a two-lane curved stretch of Bankhead Highway in Douglas County when she observed a red van, later determined to be driven by Pefinis, drift across the road into her lane "like he was changing lanes." According to the victim, "it's as though he didn't turn and follow the curve, he just went into [her] lane." The van was approximately "eight or nine car lengths" in front of her, and when it did not change its course but "kept coming at [her]" while "still in [her] lane," the victim believed that she had "to get out of the way" to avoid a collision. As she attempted to avoid Pefinis' van by crossing into the eastbound lane to pull into the driveway of a gas company, Pefinis crossed back into the eastbound lane and struck the victim's car.

An investigator with the Douglas County Sheriff's Office testified that based on his investigation, it appeared that "[t]he [victim's] car was coming westbound . . . and the red van [was] coming from the eastbound side. But with these marks going

2

across the road and the area of impact. . . , it appears that the red van was in this lane . . . going . . . eastbound in the westbound lanes." A witness driving behind the victim in the same lane also testified that when Pefinis's car approached the curve "he [didn't] turn at all. He just comes straight" into the westbound lane. She further testified that as Pefinis' van traveled in their lane, "[w]e didn't know if he was asleep, if he'd wake up [.]"

Pefinis and the victim both sustained severe injuries and were transported by ambulance to an area hospital.[1] The victim was hospitalized for almost two months and suffered severe injuries, including fractures of the right tibia, ankle, pelvis, left wrist and knee, and internal injuries, resulting in a bowel resection, and the removal of the victim's appendix and gallbladder. The victim received physical and occupational therapy to learn to walk again, but she was not able to resume teaching dance because of her wheelchair restrictions.

The intake nurse at the emergency room testified that Pefinis told her that on the day of the crash he had taken methadone, a medication that could cause

---

[1] Pefinis testified at the hearing on his motion for new trial that he was life flighted to the hospital and was hospitalized for three weeks.

3

drowsiness and "impair [his] ability to operate and automobile,"[2] On November 10, 2011, Pefinis provided police with a recorded statement about the crash, and the officer testified that Pefinis said that he had not taken methadone on the day of the crash, but provided the officer with a prescription he had for Xanax, which Pefinis said that he had taken earlier that day.[3] On January 22, 2012, following his indictment and the issuance of an arrest warrant, Pefinis gave police a second recorded statement, after which he was arrested.[4]

OCGA § 40-6-390 (a) provides that "[a]ny person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving."[5] And, "[w]hoever, without malice, shall cause bodily harm to

---

[2] The hospital did not conduct a drug screen of Pefinis' blood or urine, and there was no warrant issued for such a search.

[3] The State's pharmacological expert testified that methadone is the "longest acting opiod," that it can cause "extreme drowsiness," and can last in the system for "from 24 to 36 hours." He also testified that taking methadone and Xanax together "would cause profound sedation, drowsiness, dizziness and, and probably incoheren[ce]."

[4] Both recorded statements were admitted at trial.

[5] Pefinis was charged with the offense of reckless driving, for driving his van "in a reckless manner in reckless disregard of the safety of persons and property by completely crossing the center line of said road into oncoming traffic and by veering back toward the center line causing a head-on collision with a vehicle driven by [the

4

another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or member thereof . . . through the violation of Code Section 40-6-390 . . . shall be guilty of the crime of serious injury by vehicle." OCGA § 40-6-394.[6]

Although Pefinis contends that the evidence demonstrated that the collision was accidental rather than reckless , it is the role of the jury, not this Court, to "determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Punctuation omitted.) *Harris v. State*, 332 Ga. App. 789, 790-91 (1) (775 SE2d 165) (2015). Here, the jury resolved those conflicts against Pefinis. See *Brock v. State*, 293 Ga. 156, 157-58 (1) (743 SE2d 410) (2013) ("It is the jury's role to assess the credibility of witnesses and resolve any inconsistencies in the evidence."); *Moss v. State*, 209 Ga. App. 59, 60 (1) (432 SE2d 825) (1993) ("Whether the injuries sustained by the victims were caused through appellant's violation of any subsection of OCGA § 40-6-391 (a) was a question of

victim]."

[6] The indictment charged Pefinis with serious injury by vehicle by "caus[ing] bodily harm to [the victim] by depriving said person of various members of her body, to wit: her right tibia, ankle and pelvis, and left wrist and knee, through a violation of Code section 40-6-390 of the Official Code of Georgia."

5

fact for the jury. This fact, like any other fact, may be established by circumstantial evidence.") In this case, the evidence was sufficient to support Pefinis' convictions under the standard established in *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

2. Pefinis also contends that trial counsel was ineffective for failing to advise him that by not testifying he was forfeiting a jury charge on accident. The record reflects that Pefinis requested a charge on accident, and asserted that it was an affirmative defense supported by the evidence at trial. The State argued that Pefinis was not entitled to the charge unless he had testified and admitted to committing the offense, and that he had not done so, instead maintaining that he did not remember what happened and had not driven recklessly. The trial court denied the charge on accident, appearing to find that it was not warranted by the evidence.

> [T]o obtain reversal of a conviction based on a claim of ineffective assistance of counsel, a defendant has the burden of proving that counsel's performance was deficient, and that, but for the deficiency, there was a reasonable probability the outcome of the trial would have been different. To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under the circumstances confronting counsel at the time without resorting to hindsight. In considering adequacy of performance, trial counsel is strongly presumed to have rendered

6

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

(Citations and punctuation omitted.) *Copeland v. State*, 327 Ga. App. 520, 527 (3) (759 SE2d 593) (2014). "When reviewing a trial court's decision . . . [on] a motion for new trial based on ineffective assistance of counsel, we defer to the trial court's findings of fact unless clearly erroneous, but owe no such deference to its conclusions of law which we apply independently to the facts." *State v. Sims*, 296 Ga. 465, 468-469 (2) (769 SE2d 62) (2015).

In reviewing Pefinis' claim of ineffective assistance, and concluding that it was meritless, the trial court found that prior to the testimony of the State's final witness, it had advised Pefinis that when the State rested its case, Pefinis would be entitled to testify, that he was not required to do so, that the decision was ultimately his, and that his decision to testify or not would be Pefinis' "'choice unless you tell me otherwise at the time.'" It further found that Pefinis did not object or otherwise indicate that trial counsel was incorrect when it advised the court after the State rested that Pefinis would not be testifying.

The trial court also concluded that, although at the hearing on the motion for new trial Pefinis testified that trial counsel did not inform him that by not testifying

7

he might lose the right to an accident charge, and that he would have elected to testify

had he been so informed, based on the trial evidence

> Pefinis had no legitimate and reasonable expectation of the use of an accident defense had he testified. Moreover, Pefinis would not have been entitled to an instruction on accident. Further, depending on how Pefinis testified, the possibility loomed that Pefinis might have been subject to impeachment on cross-examination by way of his prior convictions for drugs and also for DUIS.[7]

At the motion for new trial hearing, trial counsel testified that he and Pefinis had

> talked extensively about . . . whether he wanted to testify or he didn't want to testify, and ultimately it's always the client's decision if they want to or not. . . . Mr. Pefinis had been in court before. He had been in prison before. He'd been through the criminal justice system before. He was aware of his right to testify, and it was a situation where I felt– and I don't mind saying this, that I don't think Mr. Pefinis could have done anything to help himself [by testifying.] The reason I say that is by testifying, he pretty much opens himself up to . . . inconsistent statements. He opens himself up to any sort of history within the case that might be contradictory to what he testified to.

---

[7] Under OCGA § 16-2-2, "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."

Trial counsel further testified that he believed that Pefinis "had essentially testified through the videos [of his statements]. There was nothing more that he was going to add from that, from the stand that wasn't played on the video."

Even if we were to assume that trial counsel was deficient for failing to advise Pefinis that by not testifying he might lose the right to put forth the defense of accident, the evidence does not demonstrate that he was prejudiced by trial counsel's failure to do so. This is because Pefinis failed to show that even if he had testified, there is a reasonable probability that the trial court would have charged the jury on accident and the outcome of the trial would have been different. The trial court found that the evidence did not warrant a charge on accident, and trial counsel testified that Pefinis had "essentially testified" through the videotaped statements he had previously given, and that there was nothing more Pefinis could add "from the stand" to support an accident charge.

Thus, the trial court's decision was not because Pefinis did not testify, but rather because the evidence did not warrant the charge, irrespective of whether Pefinis testified. See *Jones v. State*, 287 Ga. 770, 771-772 (2) (700 SE2d 350) (2010) ("Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law.") Accordingly, Pefinis has not demonstrated prejudice as there is

9

no reasonable probability that but for trial counsel's failure to advise Pefinis' that failing to testify might preclude an accident defense, the outcome of his trial would have been different.

*Judgment affirmed. McMillian and Mercier, JJ., concur.*

.