**THIRD DIVISION
DILLARD, C. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 24, 2019**

# In the Court of Appeals of Georgia

A19A0468. SEALS v. THE STATE.

DILLARD, Chief Judge.

Following trial, Tavares Seals was convicted of rape (two counts), burglary, aggravated assault, false imprisonment, third-degree cruelty to children (three counts), and giving a false name to law enforcement. Seals appeals his convictions, arguing that (1) the evidence was insufficient to sustain them; (2) the trial court plainly erred when it failed to rule on his request for a certain jury charge until after closing arguments; (3) the trial court plainly erred in when it gave a sequential charge to the jury, and (4) trial counsel rendered ineffective assistance in several respects. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on June 13, 2009, S. P. went to a dance club by herself around midnight. At the club, S. P. ran into Seals, a longtime acquaintance, and they sat at a table chatting with other people. Later, the group danced together, and at some point, Seals asked S. P. if she would meet him after they left the club to have sex, but she declined his request. S. P. then left the club alone sometime between 2:00 a.m. and 2:30 a.m., while Seals stayed there. And after picking up her three children at her father's house, S. P. drove home and went to bed. Ordinarily, S. P.'s children slept in the living room, but that night, they slept in her bedroom.

After S. P. and her children were asleep, she woke up to someone, later identified as Seals, grabbing her head and putting a knife to her neck. Seals then grabbed S. P.'s hair while holding the knife to her neck, at which point the children heard the commotion and got out of bed "screaming and hollering." When the children exited the bedroom, Seals told them that if they did not go back into the bedroom, he would hurt them. And to prevent S. P. from escaping, he slammed her up against a wall, threw her on the sofa in her living room, and forced her to cover her head with a shirt. Seals then made S. P. lie down on the floor while her children were

---

[1] *See, e.g.*, *Morris v. State*, 340 Ga. App. 295, 295 (797 SE2d 207) (2017).

nearby crying. S. P. did not recognize Seals as her attacker because he disguised his voice, but she believed the perpetrator was someone she knew. Once she was on the floor, Seals tore S. P.'s bra off and had sex with her against her will.

Eventually, Seals fled the scene, and S. P. called her father, whose girlfriend then called the police. When the police arrived, S. P. told them about the attack before going to the hospital for treatment and to have a rape kit performed. The police also interviewed S. P.'s children about what happened, and her eldest child identified the intruder as Seals. An investigation ensued, and during a search of S. P.'s home, police recovered a kitchen knife in the living room, where the incident reportedly occurred. Approximately one month after the attack, on July 14, 2009, Seals was arrested, and investigators obtained a DNA sample from him for comparison with the DNA collected from the rape kit performed on S. P. Ultimately, the Georgia Bureau of Investigation tested S. P.'s rape kit and discovered both Seals and S.P.'s DNA.

On July 10, 2009, just days before his arrest, Seals encountered S. T. when she was walking home, and he threatened her, saying that if she "[didn't] give [him] none," he would kill her. S. T. believed this statement to mean that if she did not have sex with Seals, he would "hurt [her] real bad." But S. T. did not want to have sex with Seals, and she immediately told him so. Despite her protests, Seals pulled S. T.'s hair

3

and choked her while she fought back and tried to escape. Seals then told S. T. to "shut the hell up," pulled down her pants, and "put his [penis] inside [her] vagina." During the attack, Seals held S. T.'s neck so tight that she could hardly breathe, and he told her that if she told anyone about what happened, he would kill her. When the assault was over, S. T. walked home and called the police. S. T. reported these events before going to the hospital, where a rape kit was performed. As with S. P., investigators later confirmed that Seals's DNA was found inside S.T.'s rape kit.

Subsequently, as to the attack on S. T., Seals was charged with rape, and as to his assault on S. P., he was charged with rape, burglary, aggravated assault, and false imprisonment. Additionally, Seals was charged with one count each of cruelty to children as to S. P.'s three children. Following a jury trial, Seals was convicted of all charged offenses. He then obtained new counsel and filed a motion for a new trial; and after a hearing on the matter, his motion was denied. This appeal follows.

1. Addressing Seals's last argument first, he contends that the evidence presented at trial was insufficient to support his convictions. We disagree.

When a criminal conviction is appealed, "the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption

4

of innocence."[2] And in evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility but only resolve whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] With these guiding principles in mind, we turn now to Seals's specific challenge to the sufficiency of the evidence presented in this case.

Here, citing only the standard for considering whether evidence is sufficient to support a conviction, Seals summarily asserts that the State failed to prove his guilt beyond a reasonable doubt. But he does not argue that the State failed to prove a particular element of any one of his many offenses. Indeed, in his three-paragraph argument as to this claim, Seals does not assert arguments as to any individual

---

[2] *Howard v. State*, 340 Ga. App. 133, 136 (1) (796 SE2d 757) (2017); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[3] *Howard*, 340 Ga. App. at 136 (1) (punctuation omitted); *accord Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see Jackson*, 443 U.S. at 319 (III) (B).

[4] *Howard*, 340 Ga. App. at 136 (1) (punctuation omitted); *accord Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

offense, cite legal authority applicable to any of his offenses, or present meaningful arguments applying the relevant law to the particular facts of this case. Thus, Seals has abandoned any contention that the State failed to prove the essential elements of each charged offense.[5]

Instead of addressing each of his convictions separately, Seals reiterates a small portion of the evidence presented at his three-day trial and essentially asks us to substitute our judgment for that of the jury. Specifically, he points to the testimony he offered in his defense, claiming that he "provided reasonable explanations why the complaining witnesses would testify falsely against him." He similarly argues that due to "the conflicting nature of the evidence introduced at trial[,]" including his testimony and that of the victims, the State failed to prove its case. But Seals's argument ignores that the jury obviously did not find his testimony and claims of innocence credible. And, of course, the determination of a witness's credibility,

---

[5] *See Gunn v. State*, 342 Ga. App. 615, 623-24 (3) (804 SE2d 118) (2017) (holding that the appellant abandoned two claims of error when, beyond one or two case citations to "the most basic legal authority" as to the purpose of the legal rule at issue and the general standard applicable in reviewing the alleged error on appeal); *Howard*, 340 Ga. App. at 140 (3) (a) (reiterating that mere conclusory statements are not the type of meaningful argument contemplated by this Court's rules).

including the defendant's testimony, is "within the exclusive province of the jury."[6] Indeed, it is the role of the jury, not this Court, to "determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence."[7] And here, Seals's challenge to his convictions based *solely* on conflicts in the evidence, which the jury resolved against him, is meritless.[8]

2. Next, Seals argues that the trial court plainly erred when it failed to rule on his request for a jury charge that sexual battery is a lesser-included offense of rape until after closing arguments and by giving an improper sequential jury charge. Again, we disagree.

---

[6] *Justice v. State*, 263 Ga. App. 858, 859 (589 SE2d 624) (2003) (punctuation omitted); *accord McDonald v. State*, 256 Ga. App. 369, 369 (568 SE2d 588) (2002).

[7] *Howard*, 340 Ga. App. at 137 (1) (punctuation omitted); *accord Pefinis v. State*, 344 Ga. App. 428, 430 (1) (810 SE2d 329) (2018).

[8] *See Glass v. State*, 255 Ga. App. 390, 392-93 (1) (565 SE2d 500) (2002) ("While [the defendant] challenges the credibility of the victim and [another witness] by pointing out inconsistencies in their testimony, it is not the function of an appellate court to weigh the evidence, determine the credibility of the witnesses, or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged."); *Williams v. State*, 239 Ga. App. 30, 31 (1) (521 SE2d 27) (1999) ("The issue of which version of the[ ] events to believe, [the defendant's] or the State's, was for the jury, which resolved the credibility issues in favor of the State.").

As Seals concedes, he failed to object at trial to the timing of the trial court's ruling on the sexual-battery charge and to the allegedly improper sequential charge. Under such circumstances, we review these issues for plain error under OCGA § 17-8-58 (b).[9] In doing so, we apply a four-prong test. First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived by the appellant.[10] Next, the legal error must be clear or obvious, "rather than subject to reasonable dispute."[11] Additionally, the error must have affected the appellant's substantial rights, "which in the ordinary case means he must demonstrate that it affected the outcome of the

---

[9] *See* OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."); *Booth v. State*, 301 Ga. 678, 680 (2) (804 SE2d 104) (2017) ("[When], as here, a party fails to object to a jury charge, we review the issue for plain error"); *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) ("An appellate court is required to review for plain error an alleged jury instruction error to which no objection was raised at trial, provided the enumeration of error is properly enumerated and argued on appeal.").

[10] *See Booth*, 301 Ga. at 680 (2) (punctuation omitted); *accord State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

[11] *Booth*, 301 Ga. at 680 (2) (punctuation omitted); *accord Kelly*, 290 Ga. at 33 (2) (a).

8

trial court proceedings."[12] Lastly, if the above three prongs are satisfied, the appellate court has "the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[13] With this standard of review in mind, we will now consider Seals's specific claims of error.

(a) *The sexual-battery charge*. Shortly before the State rested its case, the trial court discussed certain jury charges with the parties, and at that time, Seals's trial counsel requested, *inter alia*, a jury charge on sexual battery as a lesser-included offense at least as to the rape charge involving S. T. Defense counsel noted that Seals planned to testify and deny attacking S. T., but argued that the instruction was proper based on evidence that he grabbed her throat. The court expressed concern that such an instruction might be improper, but ultimately indicated that it needed to "think about" the requested instruction and suggested that the parties discuss the issue further. The court then moved on to address other, unrelated, jury charges, and neither party objected when it did so.

---

[12] *Booth*, 301 Ga. at 680 (2) (punctuation omitted); *accord Kelly*, 290 Ga. at 33 (2) (a).

[13] *Booth*, 301 Ga. at 680 (2) (punctuation omitted); *accord Kelly*, 290 Ga. at 33 (2) (a).

Following this discussion, the State presented its final witness and rested its case. The defense then presented several witnesses, including Seals, who admitted having sex with S. P. and S. T., but claimed both sexual encounters were consensual. Then, after the close of evidence and closing arguments, the trial court addressed some outstanding issues before it charged the jury. As to the sexual-battery jury instruction requested by Seals, the parties agreed that it was a lesser-included offense of rape, and the court ruled that it would give the instruction as to both rape charges. And indeed, when charging the jury, the trial court instructed that, as to both rape counts, it could find Seals not guilty of rape, but guilty of sexual battery as a lesser-included offense of rape.

Nevertheless, Seals argues that the trial court erred by failing to rule on his request for the sexual-battery charge until *after* closing arguments, thereby depriving his counsel of the opportunity to make arguments related to that charge. In this regard, OCGA § 5-5-24 (b) provides, in relevant part:

> In all cases, at the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may present to the court written requests that it instruct the jury on the law as set forth therein. . . . The court *shall* inform counsel of its proposed action upon the

10

requests *prior to their arguments* to the jury but shall instruct the jury
after the arguments are completed.[14]

And this is a mandatory rule, "designed to permit counsel to argue the case intelligently before the jury."[15] And in applying this rule, Georgia courts have found, in some cases, that a trial court's failure to inform the parties of which jury instructions it planned to give prior to closing arguments constituted reversible error.[16] Nevertheless, as in any case, "[a] party must show harm as well as error on appeal[,]"[17] and as explained *supra*, under the deferential plain-error standard of

---

[14] (Emphasis supplied).

[15] *King v. State*, 201 Ga. App. 391, 392 (6) (411 SE2d 278) (1991); *accord Stinson v. State*, 273 Ga. 519, 521 (2) (544 SE2d 118) (2001).

[16] *See, e.g.*, *Thompson v. State*, 173 Ga. App. 566, 566 (1) (327 SE2d 236) (1985) (holding that it was reversible error for the trial court to deny defense counsel's request to clarify what jury charges would be given prior to charging the jury in violation of OCGA § 5-5-24 (b)); *Evans v. State*, 146 Ga. App. 480, 482 (1) (246 SE2d 482) (1978) (holding that it was reversible error when, despite defense counsel's request for a jury charge on a lesser-included offense, the trial court "absolutely refused to rule" on it, "[f]orcing counsel to make his closing argument under such conditions reduces such arguments to a game of roulette imposed on counsel by the court").

[17] *Quinn v. State*, 234 Ga. App. 360, 362 (3) (506 SE2d 890) (1998); *see Crouse v. State*, 271 Ga. App. 820, 823 (2) (611 SE2d 113) (2005) ("Even in the absence of waiver, . . . reversal is not required. It is axiomatic that a party must show harm as well as error to prevail on appeal.").

review, to warrant reversal of a conviction, "the error must have affected the appellant's substantial rights, which in the ordinary case" requires the defendant to "demonstrate that it affected the outcome of the trial court proceedings."[18]

Here, at trial, Seals's sole defense was that he had consensual sex with the victims, he never attacked them, and they fabricated their rape allegations. If the jury believed this defense, it would not be authorized to find Seals guilty of rape *or* sexual battery. Thus, even if trial counsel had known he could argue to the jury that it could find Seals guilty of sexual battery instead of rape, such an argument would have been in direct conflict with Seal's own theory of defense. Moreover, as acknowledged by Seals's trial counsel at the motion-for-new-trial hearing, the evidence presented at trial, including the victims' testimony, the DNA evidence, and Seals's admission to having sex with both victims, did not support a conviction for sexual battery because a rape conviction requires evidence of penetration, while sexual battery does not.[19]

_____

[18] *Booth*, 301 Ga. at 680 (2) (punctuation omitted); *accord Kelly*, 290 Ga. at 33 (2) (a).

[19] *Compare* OCGA § 16-6-1 (a) (1) (2009) ("A person commits the offense of rape when he has carnal knowledge of: (1) A female forcibly and against her will; . . .Carnal knowledge in rape occurs when there is any *penetration of the female sex organ by the male sex organ.*" (emphasis supplied)), *with* OCGA § 16-2-22.1 (a), (b) (2009) ("For the purposes of this Code section, the term 'intimate parts' means the primary genital area, anus, groin, inner thighs, or buttocks of a male or female and the

If counsel had argued otherwise during his closing argument, it would have been unsupported by the evidence and may have served only to confuse the jury.[20] Given these particular circumstances, Seals cannot show that he was harmed when the trial court failed to notify his counsel of its ruling on the sexual-battery charge before

---

breasts of a female. A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.").

[20] *See Harris v. State*, 322 Ga. App. 87, 88 (1) (744 SE2d 82) (2013) (holding that the trial court did not abuse its discretion in preventing testimony that could confuse the jury); *Noellien v. State*, 298 Ga. App. 47, 48 (2) (679 SE2d 75) (2009) (holding that the trial court did not abuse its discretion when it limited defense counsel's closing argument when it determined that the argument requested by counsel was more likely to confuse than enlighten the jury).

closing arguments,[21] much less that the alleged error affected his substantial rights or the outcome of the trial court proceedings.[22]

(b) *The sequential jury charge.* Seals argues that the trial court erred in giving an improper sequential jury charge, which instructed the jury that it must unanimously reach a verdict as to rape before considering whether he was guilty of the lesser-included offense of sexual battery.

As to sequential jury charges, our Supreme Court recently reiterated its long-standing precedent that "a sequential charge requiring the jury to consider [a lesser-included offense] *only* if they have considered and found the defendant not guilty of

---

[21] *See Cochran v. State*, 276 Ga. App. 840, 841 (625 SE2d 92) (2005) (holding that there was no reversible error when the trial court *sua sponte* gave an additional unrequested charge to the jury during deliberations and defense counsel asked that the charge be stricken, contending that he would have argued the issue during closing arguments because, even if the trial court erred, the error was harmless in light of the evidence presented at trial); *Roberts v. State*, 223 Ga. App. 167, 169 (5) (477 SE2d 345) (1996) (holding that the trial court's failure to inform defense counsel which requests to charge would be given before closing argument was not reversible error when the defendant failed to show harm from the court's failure to comply with OCGA § 5-5-24); *Latimore v. State*, 170 Ga. App. 848, 849 (2) (318 SE2d 722) (1984) (holding that the trial court's failure to inform defense counsel of its decision on several requests to charge until after closing arguments was not harmful error when the court instructed the jury at least in substance as to all of the defendant's written requests except as to a request that was not applicable to the evidence presented at trial).

[22] *See supra* notes 18 and 21 & accompanying text.

[the greater indicted offense] is not appropriate [when] there is evidence that would authorize a charge on [the lesser offense]."[23] But instructing the jury that it must consider the greater offense before considering any lesser-included offense is "not equivalent to instructing them that they may consider the lesser included offense only if they have considered *and found the defendant not guilty of* the greater offense."[24] Indeed, a trial court may instruct a jury to consider "a greater offense before it considers a lesser offense[,] [but] [a] trial court may not . . . instruct the jury that it must reach a unanimous verdict on the greater offense before considering the lesser offense."[25]

Here, Seals argues that the following excerpt from the trial court's jury charge was improper:

---

[23] *Morris v. State*, 303 Ga. 192, 197 (V) (A) (811 SE2d 321) (2018), *quoting Edge v. State*, 261 Ga. 865, 867 (2) (414 SE2d 463) (1992).

[24] *Morris*, 303 Ga. at 198 (V) (A).

[25] *Morris*, 303 Ga. at 198 (V) (A); *see Armstrong v. State*, 277 Ga. 122, 123 (2) (587 SE2d 5) (2003) ("A trial court may instruct a jury to consider a greater offense before it considers a lesser offense. A trial court may not, however, instruct the jury that it must reach a unanimous verdict on the greater offense before considering the lesser offense." (footnote omitted)); *Cantrell v. State*, 266 Ga. 700, 702 (469 SE2d 660) (1996) (holding that when "a jury deliberates a greater offense and an included offense, unanimity is not required for the greater offense before the jury can vote on the included offense").

If, after considering the testimony and the evidence presented to you, together with the instructions that I've given you, you should find and believe beyond a reasonable doubt that Mr. Seals, on July 10, 2009, in Greene County, Georgia, committed the offense of rape, as alleged in Count 1 of the indictment, then you would be authorized to find him guilty. And in that event, the form of your verdict as to that charge would be, "We, the jury, find the defendant guilty." And you would simply write in the word guilty.

If you do not believe that he is guilty of that charge, or if you have any reasonable doubt as to his guilt on that charge, then it's your duty to acquit him of that particular charge. And in that event, the form of the verdict would be, "We, the jury, find the defendant not guilty."

Now, on the first two counts, there is a lesser[-]included offense which is called sexual battery that I defined for you a minute ago. Now, as to the first two counts of the indictment only, if you do not believe beyond a reasonable doubt the defendant is guilty of the offense of rape, on either one or both charges, but you do believe beyond a reasonable doubt that he is guilty of the offense of sexual battery, then you would be authorized to find him guilty of sexual battery. And in that event, the form of your verdict as to Count 1 and 2[ ] would be, "We, the jury, find the defendant guilty of sexual battery." And you'd just write out the words sexual battery.

Contrary to Seals's argument, this sequential charge on rape and sexual battery was not improper. First, a sequential jury charge is only improper if, *inter alia*, there

16

is sufficient evidence to authorize a guilty verdict on the lesser offense,[26] and as previously discussed, the evidence here did not support a sexual-battery conviction because it was undisputed that Seals penetrated both victims.[27] Second, a trial court is permitted to instruct the jury to consider the greater-indicted offense before considering the lesser-included offense, which is exactly what the trial court did in this instruction.[28] There is simply no language in the challenged instruction on rape and sexual battery suggesting that the jury was *required* to reach a *unanimous* verdict as to rape before considering the lesser-included offense of sexual battery, and Seals identifies no such language. While Seals uses the word "unanimous" throughout his brief when addressing this claim of error, the trial court did not use that word or any other language that could given the jury the impression that it must reach a unanimous verdict on rape before even considering sexual battery. And because Georgia's appellate courts have held that sequential jury instructions similar to the

---

[26] *See supra* note 23 & accompanying text.

[27] *See supra* note 19 & accompanying text.

[28] *See supra* note 24-25 & accompanying text.

one in this case were not reversible error, Seals has not shown that the trial court erred, plainly or otherwise.[29]

3. Finally, Seals argues that he received ineffective assistance of counsel in several respects. Once again, we disagree.

In evaluating Seals's claims that his trial counsel rendered constitutionally ineffective assistance, we apply the two-pronged test established in *Strickland v. Washington*,[30] which requires that he show his trial counsel's performance was "deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would

---

[29] *See Armstrong*, 277 Ga. at 123 (2) (holding that no reversible error existed when neither the trial court nor the verdict form required the jury to reach a unanimous verdict on the greater offense before considering the lesser-included offense); *Camphor v. State*, 272 Ga. 408, 415 (6) (d) (529 SE2d 121) (2000) (holding that, although the instruction given deviated from the Suggested Pattern Instruction, which the Court deemed preferable, it did not *compel* the jury to reach a unanimous verdict on the greater offense before it was allowed to consider the lesser offense, and as such, it was not an impermissible instruction). *Cf. Kunselman v. State*, 232 Ga. App. 323, 325 (1) (501 SE2d 834) (1998) (holding that a jury charge on a lesser-included offense was reversible error when the jury was instructed that if it found the defendant not guilty of the charged offense "then and only then" could it consider the lesser offense because it mandated unanimity as to the greater charge).

[30] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

18

have been different."[31] Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[32] In applying the second prong, the question is whether "there exists a reasonable probability that, but for his counsel's errors, the jury would have had reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different."[33] And unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de*

---

[31] *Kaufman v. State*, 344 Ga. App. 347, 355 (3) (810 SE2d 585) (2018) (punctuation omitted); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[32] *Kaufman*, 344 Ga. App. at 355-56 (3) (punctuation omitted); *accord Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[33] *Kaufman*, 344 Ga. App. at 356 (3) (punctuation omitted); *accord Ashmid*, 316 Ga. App. at 556 (3).

*novo*."[34] Bearing this analytical framework in mind, we will now address each of Seals's claims in turn.

(a) Seals argues that his trial counsel was ineffective by failing to object to the trial court's failure to rule on his request for a sexual-battery jury charge until after closing arguments because it deprived counsel of an opportunity to address that issue during his closing argument.

At the motion-for-new-trial hearing, Seals's trial counsel testified about his chosen trial strategy, explaining that he focused on an argument that the victims's sexual encounters with Seals were consensual and presented an "all or nothing" defense because he did not believe the charge on sexual battery was supported by the evidence. Although he requested the sexual-battery instruction as "a shot in the dark[,]" he testified that arguing that issue would not have been consistent with his consent defense, and the evidence presented showed only sexual intercourse and penetration.[35] And while counsel testified that he would not "give up" other possible defenses, he chose to focus on a consent defense because, *inter alia*, Seals admitted

---

[34] *Kaufman*, 344 Ga. App. at 356 (3) (punctuation omitted); *accord Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

[35] *See supra* note 19 & accompanying text.

having sex with both victims, and his testimony was supported by DNA evidence. According to defense counsel, the jury's only task was to determine whether the sex was consensual or constituted rape.

Given this testimony, and the evidence presented at trial, Seals's counsel was not deficient for pursuing an "all or nothing" defense, rather than arguing to the jury that it could find Seals guilty of sexual assault instead of rape and seeking the court's permission to do so. As our Supreme Court has explained, "[a]n attorney's decision about which defense to present is a question of trial strategy[,] [and] [m]ore specifically, pursuit of an 'all or nothing' defense generally is a permissible trial strategy."[36] And for the same reasons, Seals cannot show that he was prejudiced by

---

[36] *Blackwell v. State*, 302 Ga. 820, 824 (3) (809 SE2d 727) (2018) (citation and punctuation omitted); *see id.* at 825-26 (3) (holding that it was not unreasonable trial counsel to present an all-or-nothing defense and make the strategic decision not to request a jury instruction on a lesser-included offense when counsel did not believe the evidence supported a conviction for the lesser offense and the instruction would be inconsistent with the defendant's claim that he acted in self defense); *McKee v. State*, 277 Ga. 577, 579-80 (591 SE2d 814) (2004) (holding that trial counsel's performance was not deficient when he failed to request a charge of involuntary manslaughter as a lesser-included offense of murder that would have conflicted with the "all-or-nothing" defense strategy that counsel, after consultation with the defendant, decided to pursue).

trial counsel's decision not to seek a ruling on the sexual-assault jury charge prior to closing arguments.[37]

(b) Next, Seals argues that his trial counsel was ineffective for failing to object to the trial court's improper sequential charge to the jury. Given our holding in Division (2) (b) *supra*, that the challenged jury instruction was permissible, trial counsel was not ineffective for failing to make a futile, meritless objection to it.[38]

(c) Seals also contends that his counsel was ineffective by failing to object to numerous hearsay statements that tended to bolster the credibility of the two alleged victims.

---

[37] *See Blackwell*, 302 Ga. at 826-27 (3) (holding that the defendant could not show that he was prejudiced by his counsel's failure to request a jury charge on a lesser-included offense when, *inter alia*, counsel's testimony showed that the instruction would have been inappropriate and unhelpful and there was insufficient evidence presented at trial to support a reasonable probability that the jury would have returned a guilty verdict on the lesser-included offense, rather than the indicted offense); *Clark v. State*, 348 Ga. App. 235, 245-46 (2) (f) (820 SE2d 274) (2018) (holding that the defendant was not prejudiced when his counsel failed to request an instruction on a lesser included offense of reckless conduct when the defendant testified that someone else committed the crime and also that his conduct did not rise to the level of reckless conduct because, under his theory of defense, he would not be guilty of *either* crime).

[38] *See Dublin v. State*, 302 Ga. 60, 62-63 (1) (805 SE2d 27) (2017) (holding that counsel's failure to pursue a futile objection does not amount to ineffective assistance); *McGuire v. State*, 266 Ga. App. 673, 678 (4) (a) (598 SE2d 55) (2004) (same).

22

Here, Seals challenges testimony by doctors and police investigators, in which they described what they observed when interacting with the victims and statements the victims made to them at that time. Each of these witnesses provided testimony that was substantially consistent with S. P. and S. T.'s testimony at trial about their sexual assaults.

In Georgia, a witness's prior consistent statement is admissible only when: "(1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination."[39] And a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if "affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[40] Finally, to be admissible to refute the allegation of fabrication, the prior statement must "predate the alleged fabrication, influence, or motive."[41]

---

[39] *Johnson v. State*, 328 Ga. App. 702, 706 (2) (760 SE2d 682) (2014) (punctuation omitted).

[40] *Id.* (punctuation omitted).

[41] *Id.* (punctuation omitted).

Here, it is undisputed that both victims were present at trial, and their veracity was challenged when Seals contended that the victims fabricated their rape allegations. The State appears to suggest that the victims' prior out-of-court statements were admissible because Seals insinuated at trial that each victim had an improper motive to accuse him of rape. Specifically, as to S. P., the State notes that Seals presented evidence that she was motivated to lie because he failed to pay her money that he promised to pay, and S. T. may have lied because she did not want her boyfriend to find out she was "fooling around." But even if Seals had explicitly argued that the victims had these improper motives to lie, the motives would have arisen *before* the victims told anyone, prior to or during trial, that they were raped. Thus, Seals's counsel may have been able to raise objections to the testimony at issue.[42]

Nevertheless, at the motion-for-new-trial hearing, Seals's trial counsel testified that any hearsay testimony from law enforcement or treatment providers was harmless in this case because "it didn't bolster the [victims' testimony] and it didn't add any

---

[42] *See, e.g.*, *Character v. State*, 285 Ga. 112, 120 (6) (674 SE2d 280) (2009) (holding that the trial court erred in permitting the prosecutor to read a witness's prior consistent statement when, *inter alia*, any improper motive or influence would have been present both at the time of the prior statement and at trial, but concluding that, under the circumstances in the case, the error was harmless).

out-of-court statement that [he] didn't have a chance to cross-examine prior to [the witnesses] making them." Defense counsel conceded that he may have been wrong, but maintained this was his opinion at the time. Additionally, counsel noted that "sometimes an objection to something like this can do more harm than good in the case." For example, counsel testified that the prosecutor in this case appeared nervous during the trial and "kind of stutter[ed] along," and he did not want to give the jury the impression that he was attacking the victim or opposing counsel. Seals's counsel also believed that in a "sexual assault case of any nature," one should avoid raising certain objections or "[y]ou'll get hurt." But counsel acknowledged that there is a fine line when making decisions about whether to object in these circumstances and the "boundaries of that line are sort of . . . fuzzy."

Given this testimony, even if Seals has identified meritorious objections that his counsel could have made to hearsay testimony during trial, he cannot show that counsel's affirmative decision not to raise such objections was so patently unreasonable that no competent attorney would have made the same decision. Indeed, reasonable decisions as to whether or not to raise a specific objection are "ordinarily

matters of trial strategy and provide no ground for reversal."[43] As detailed above, trial counsel provided strategic reasons for his failure to raise such objections to the testimony identified by Seals. And we have held that these types of decisions constitute reasonable trial strategy and do not amount to ineffective assistance of counsel.[44]

For all these reasons, we affirm Seals's convictions.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*

---

[43] *Hardin v. State*, 344 Ga. App. 378, 383 (1) (b) (810 SE2d 602) (2018) (punctuation omitted); *see Ray v. State*, 345 Ga. App. 522 (3) (c) (812 SE2d 97) (2018) ("Even though a different attorney might have chosen a different trial strategy, this does not equate to ineffective assistance of counsel." (punctuation omitted)).

[44] *See Payne v. State*, 329 Ga. App. 625, 630 (2) (b) (765 SE2d 770) (2014) (holding that a strategy of "avoiding an objection that would draw the jury's attention to [a] statement, and instead challenging the testimony through cross-examination cannot be found to be outside the wide range of reasonable professional assistance" (punctuation omitted); *Damerow v. State*, 310 Ga. App. 530, 537 (a) (ii) (714 SE2d 82) (2011) ("Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy[.]" (punctuation omitted)); *Gregoire v. State*, 309 Ga. App. 309, 312-13 (2) (711 SE2d 306) (2011) (noting that this Court has reversed convictions when counsel failed to object to bolstering testimony, but *not* when counsel testified reasonably and consistently about the strategic basis for not objecting).